## Y. ANDO *v.* TOMO ANDO.

### No. 1758.

Argued August 29, 1927. Decided September 24, 1927.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PERRY, C. J.

On November 4, 1925, Y. Ando filed a libel for divorce against his wife, Tomo Ando. On December 4, 1925, the wife filed a cross libel in which she prayed for a divorce, but later amended her prayer so as to request merely a separation from bed and board. On June 24, 1926, the circuit judge reserved to this court the question whether, under the circumstances of the case, a separation could be granted to the wife upon her cross libel. On December 3, 1926, it was decided by this court that a separation could be so granted. On August 5, 1926, in this court the wife moved that the fee of her attorneys for their services upon the reserved question be fixed at $250 and that the husband be required to pay it. (All the briefs upon the reserved question were filed before, and the oral argument was had after, the application for the fee.) A hearing was had upon the questions of the financial ability of the husband to pay and of the necessities of the wife. At the conclusion of the hearing, and with the consent of both parties, by order dated November 10, 1926, the amount of the fee was fixed at $250 and the husband was required to assign to the clerk of this court as trustee all of the outstanding accounts and bills re-

ceivable then held by the husband, the trustee to collect as much of the same as possible in trust to pay the amount of the fee then just decreed and any alimony due either upon the order of the circuit court or upon the order of this court. With possible minor exceptions, the choses in action thus assigned to the trustee appeared to this court from the evidence to be all of the property which the husband then owned. The trustee subsequently collected $160 out of the property assigned to him and paid the same to the attorneys for the wife on account of the fee of $250; and found the remainder to be uncollectible.

On June 24, 1926, the circuit judge entered an order fixing temporary alimony at $125 per month and requiring the husband to pay to the wife $875 as temporary alimony for the period from December 4, 1925, to June 4, 1926, "and the further sum of $125 per month thereafter, payable on the 4th day of each and every month as and for temporary alimony."

On July 17, and upon the wife's motion, the husband was cited to show cause why he should not be punished for contempt of court for non-payment of temporary alimony. The defense offered by the husband was that he had paid bills incurred by the wife and that the only balance of alimony due and unpaid by him was $175.90 and for this latter amount he tendered a check in payment. After a hearing on the subject of whether the payments relied upon by the husband could all be credited in his favor as payments of alimony, Circuit Judge Massee, sitting in place of Judge Desha, who was absent at the time, held, by order dated July 29, 1926, and filed July 31, 1926, that of the amount claimed as payments only $266.10 should be credited to him at that time as payments of alimony, ordered the husband's check of $175.90 and another check of his in the sum of $125 to be paid to the wife and required the husband

to pay her in addition $453 in cash or to deposit in court "an irrevocable application for loan for the full value, that is, loan value, on that certain $2000.00 policy of life insurance" held by the husband "to await the return and decision of the Honorable John R. Desha in the premises." In other words, Judge Massee left it to Judge Desha to decide ultimately whether other payments of bills incurred by the wife could be credited to the husband on account of alimony. The husband deposited the irrevocable application and otherwise complied with the order. These arrangements having been made, Judge Massee evidently was satisfied, and it clearly was the fact, that the husband had thereby paid all the alimony then due.

On October 27, 1926, upon motion of the wife, the husband was again cited for contempt of court because he had paid only $85 of the alimony of $125 due September 4, 1926, and because he had not paid the installment of $125 due November 4, 1926. On November 12, 1926, Judge Desha found Ando guilty of contempt, fined him $50, thereafter ordered him to pay to the wife $250 back alimony before November 13, 1926, and denied his motion for the reduction of alimony. The fine was paid.

On December 10, 1926, Ando was by the federal court declared a bankrupt on his own petition. He reported and surrendered to that court all of his remaining assets, such as they were. On December 22, 1926, Judge Desha rendered an oral decision granting to the wife separation from bed and board, adding "this decree to take effect forthwith". At that time he also said that "the matter of alimony and counsel fees will be determined some other time." No written decree was entered. On February 7, 1927, Judge Desha, after a hearing on the subject, found that certain additional bills paid by the husband were properly to be credited to him as payments of alimony, and signed

an order to the effect that $220.25 was due to the wife by the husband for alimony,—evidently disallowing to that extent payments of bills as payments of alimony. On February 14, 1927, upon motion of the wife, the husband was again cited for contempt of court for non-payment of alimony in the sum of $845.25. On March 28, 1927, the circuit judge found the husband guilty of contempt of court and sentenced him to 20 days imprisonment. At the same time by decree he declared that the "temporary alimony" ordered on June 24, 1926, extended to and included March 4, 1927, and that the total alimony due on March 28, 1927, was $970.25; ordered that the present loan value of the insurance policy, $431, be applied to Ando's credit on that sum of $970.25, thus leaving $539.25 as the balance of alimony that had accrued and was due from the husband after application of the loan value of the insurance policy. The husband does not dispute that the sum of $539.25 was the balance due at the date of the decree last mentioned, except insofar as he claims that the temporary alimony of $125 a month ceased to accrue upon the making of the order of separation on December 22, 1926, and that from that date the order of permanent alimony at $75 per month applied.

On March 30, 1927, the circuit judge entered an order fixing permanent alimony at $75 per month from April 1, 1927, and required the husband to pay to the wife an attorney's fee of $250 for services theretofore rendered in the trial court. Under the same date of March 30, 1927, a final decree was entered in that court providing: (a) for the separation from bed and board, (b) the attorney's fee of $250, and (c) permanent alimony of $75 per month. This decree recites in its last paragraph that it is effective as of December 22, 1926.

The husband appeals to this court from the order of March 28, 1927, adjudging him guilty of contempt, from

the same order in so far as it continues the temporary alimony in effect after December 22, 1926, from the allowance of $250 as an attorney's fee for services rendered in the circuit court, and from the allowance of $75 per month as permanent alimony on the ground that this allowance is excessive. In addition to these matters, there is pending before us a motion by the wife, filed August 27, 1927, for an attorney's fee of $100 for services in this court on these appeals. All of the briefs were filed before, and the oral argument was had after, the filing of this motion.

Upon the undisputed evidence alimony in a substantial sum, at least about $389.25 and perhaps $539.25, had accrued when the order of March 28, 1927, was made, and was unpaid. A mere failure, however, by a husband to pay alimony does not necessarily constitute contempt of court. If he is financially unable to make the payments ordered, there is no contempt in the failure to pay. Financial inability to pay is a good defense. The law on this subject is clear. The husband had paid a large portion of the temporary alimony decreed; but no evidence was adduced before the circuit judge which would, in law, support a finding that he was, on March 28, 1927, or had been at any time prior thereto, financially able to pay the balance of the amount due. And the showing is clear upon the evidence that he was not financially able so to do. It is true that it appears from the testimony that in the period elapsing between the institution of this litigation and the making of the order of contempt considerable sums of money passed through the husband's hands, and that at times he was possessed of sums sufficiently large to pay all alimony due; but there are other facts explaining the partial non-payment to the wife. When the suit was instituted the husband was pursuing the business of contractor. He took contracts for the erection of

buildings. Lewers & Cooke, Ltd., and Allen & Robinson, Ltd., dealers in building materials, were in the habit of supplying him with materials and with advances of cash for payment of his laborers and of taking to themselves assignments of his contracts concurrently with the execution of the contracts themselves,—this by way of security for repayment of the advances and payment for the materials. He also borrowed from time to time from the Bank of Bishop & Co. and from others substantial sums of money to enable him to carry on his business. The larger sums of money which he received during the period of the litigation, as for example $700 from the sale of an automobile and $600 from the sale of certain machinery, were immediately paid by him to his legitimate creditors. There is no suggestion in the evidence that any of the payments made by him were in any sense fraudulent or by way of trust for his own benefit. It was entirely proper for Ando to pay his legitimate debts; it was his duty to pay those who aided him with advances of materials and cash. A wife must share in the misfortunes of her husband as well as in his good fortune and he cannot properly be expected to be liberal to her in allowances for her support and in order to do so to deny his creditors their legitimate claims. The contracting business in 1926 resulted in a loss to Ando of from $3000 to $3600—this is undisputed. For some time prior to the order of March 28, 1927, Ando had been reduced to the position of a mere carpenter and his contracting business was at an end.

In view of the undisputed state of the evidence with reference to the husband's financial inability to meet the requirements of the various orders for alimony, the adjudication of contempt cannot stand.

Whether, by reason of the fact that the undisputed evidence shows that no contempt was committed, the adjudication and the sentence are void and could be

reviewed on *habeas corpus,* need not be determined. The decree in question is of such a nature that it can be reviewed on this appeal. R. L. 1925, section 4330, provides: "Every judgment, sentence or commitment for a civil contempt or for a constructive or indirect criminal contempt shall be subject to appeal, exceptions, writ of error or other proceeding for review as provided by law in other cases; provided, however, that on any appeal or other proceeding for review only questions of law shall be considered." This provision was enacted as law in 1903, by way of amendment of the pre-existing statutes. Whatever may have been the law on the subject prior to that year, it is clear that since the date of that enactment every judgment and sentence for a civil contempt is subject to appeal or exceptions, as the case may be. In the case at bar the contempt charged was a civil contempt and not a criminal contempt. The order which the defendant is charged to have violated was one purely for the benefit of his opponent in the litigation and the sentence of imprisonment was for the purpose of enforcing compliance with that order. The two classes of contempts are usually defined in the following or similar language: "Civil contempts are those *quasi* contempts which consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court; while criminal contempts are all those acts in disrespect of the court or of its process, or which obstruct the administration of justice or tend to bring the court into disrepute, such as disorderly conduct, insulting behavior in the presence or immediate vicinity of the court, or acts of violence which interrupt its proceedings; also disobedience or resistance of the process of the court, interference with property in the custody of the law, misconduct of officers of the court, &c." Rapalje on Contempts, Sec. 21. To

the same effect are 7 A. & E. Ency. L. 28; 29; 13 C. J. 6, 7; 6 R. C. L. 490. By express direction of the legislature in this jurisdiction, therefore, a judgment for a civil contempt is subject to appeal and upon such appeal questions of law, but not questions of fact, may be considered. Whether there is in any case any substantial evidence, more than a mere scintilla, sufficient to support a finding of fact has been repeatedly regarded by this court as a question of law.

R. L. '1927, section 2978, provides that: "Whenever it shall be made to appear to the judge, after the filing of any libel, that the wife is under restraint or in destitute circumstances, the judge may pass such orders to secure her personal liberty and reasonable support pending the libel as law and justice may require". The expression "pending the libel" indicates that the reasonable support which the husband may be required to furnish to the wife is support from the institution of the suit until such time as the litigation may be finally determined. A part of the litigation was brought to a practical end, perhaps, by the oral order of December 22, 1926, granting a separation from bed and board, but as the court expressly remarked at that time, the question of alimony still remained to be considered and determined. The latter question was an essential part of the litigation. The wife had been granted the right to live separate from the husband, but she had not yet been granted or denied the right to receive permanent support from the husband as a part of the adjudication which she sought by her cross libel. In our opinion, the provision of temporary alimony was properly continued until the entry of the final decree of March 28, 1927, fixing the amount of the permanent alimony. *Sanderson* v. *Sanderson,* 25 Haw. 274, 277, is not an authority to the contrary. The ruling in that case that a decree granting a divorce to the husband, i. e., for the misconduct of the wife, had

the effect of rescinding an order of temporary alimony is not in conflict with the views here expressed under the circumstances of the case at bar as above recited.

As to the amount of the permanent alimony. Whatever the husband's financial condition may have been as a contractor in years gone by, he is now reduced to the position of a mere carpenter working by the day and receiving wages varying from $4.50 to $6 per day. At an average of $5 per day for 26 days in a month, he would receive total monthly wages of $130; but it needs no evidence to show that he will not always find employment for every working day in the month. He supports his aged mother. Whether his wife has been in the habit of working, or what wages she customarily receives when she works, does not appear from any evidence now on record before us. Presumably she belongs in a station in life similar to his and could properly be expected to do some work. Under all of these circumstances, we think that the allowance of $75 per month as alimony is excessive and that the allowance should be, until further order of the court, in the sum of $40 per month.

The attorney's fee awarded by the circuit judge for services rendered in the various hearings in that court was in a reasonable amount. That is practically conceded in this court. The fee of $100 requested for services in this court is reasonable. That, too, is not disputed. The husband's present inability to pay either of these fees is not sufficient reason for disallowing them to the wife. He may become financially able to pay them at some later time. In the cross libel in this case the wife prayed, among other things "that cross-libellant be relieved from paying the costs of this action and upon the final determination hereof be awarded a reasonable sum as and for her attorney's fees herein" and "that cross-libellee be ordered to show cause why he should

not be required to pay the sum of $250 per month as temporary alimony for the support of cross-libellant, together with a reasonable fee to counsel for libellee, cross-libellant, *pendente lite.*" In other words, at the very inception of the case, before any services were rendered by her attorney, application was made for an allowance of counsel fees against the husband. This takes the case out of the rule established in *Otani* v. *Otani, ante,* p. 61, that attorney's fees cannot be allowed in a divorce case for services already rendered. The mere delay in the hearing of the application should not be permitted to deprive the wife of the statutory assistance from her husband to which she would otherwise be entitled under the statute. It need scarcely be remarked that an application for counsel fees, like an application for alimony *pendente lite,* may be made as well in the libel itself as by a separate motion.

The order or decree adjudging the husband to be guilty of contempt of court and the sentence based thereon are reversed and set aside; the decree allowing the wife an attorney's fee of $250 for services in the circuit court is sustained; the decree continuing the temporary alimony in effect until March 28, 1927, is sustained; a fee of $100 for attorney's services rendered in this court on the present appeals is allowed in favor of the wife and against the husband; and the permanent alimony is fixed at the sum of $40 per month, commencing with the 1st day of April, 1927. The case is remanded to the trial court with instructions to enter a modified decree in accordance with this opinion.

*F. Schnack* (*Schnack & Tracy* on the briefs) for libellant.

*M. E. Winn* (*Thompson, Cathcart & Beebe* on the brief) for libellee.