## MARY TUGAEFF, ALIAS PARAS KOVIA TUGAEFF, BY MARY KANAHA, HER NEXT FRIEND v. WILLIAM JAMES TUGAEFF.

### No. 3046.

ARGUED FEBRUARY 5, 1958.        DECIDED APRIL 15, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by William James Tugaeff, respondent, from a decree entered on February 10, 1955, in an equity suit for injunction, discovery, accounting and recovery of personal property, filed on May 18, 1944, by Mary Tugaeff, also known as Paras Kovia Tugaeff, by Mary Kanaha, her next friend, petitioner. Hereafter, the word "petitioner" will be used to refer to Mary Tugaeff, unless otherwise qualified. The petitioner and the respondent were married to each other when the suit was filed. They were divorced on August 21, 1944. The petitioner died on July 23, 1953. The case was tried on February 2, 1955. Before the trial, Betty Kanaha, daughter of the petitioner and administratrix of her estate, was substituted as successor petitioner.

At the outset, we shall dispose of the respondent's contention that the trial judge lacked jurisdiction to hear this case. The contention is based on R. L. H. 1935, § 4649, which was in effect when the suit was filed, and the construction of an identical Massachusetts statute in *Weidman* v. *Weidman,* 274 Mass. 118, 174 N. E. 206.

R. L. H. 1935, § 4649, is now compiled in R. L. H. 1955, § 325-5. The statute reads as follows: "A married woman may sue and be sued in the same manner as if she were sole; but this section shall not be construed to authorize

suits between husband and wife." It preserves the common law prohibition based upon the concept of legal identity of husband and wife.

The common law prohibition does not extend to suits in equity which involve adjudication of property rights of spouses. (27 Am. Jur., *Husband and Wife*, § 585; 41 C. J. S., *Husband and Wife*, § 393) Where a wife sues her husband in equity, she must sue by her next friend. (*Reynolds* v. *Reynolds*, 24 Haw. 632) The practice was followed in the instant case. Quaere, whether the same practice must be followed under Hawaii Rules of Civil Procedure, which requires an action to be prosecuted in the name of the real party in interest. (H. R. C. P., Rule 17 [a]) Here, we do not decide the question because the petition was filed before the adoption of the new rules and the question is not before us for decision.

In *Weidman* v. *Weidman, supra,* a suit by a wife against her husband in a Massachusetts court on a New York judgment for alimony pendente lite and attorney's fee, the court sustained a demurrer to the bill of complaint on the ground that the bill merely alleged a debt and failed to allege any subject of equitable cognizance. The court stated: "The statutes of this commonwealth enlarging the rights of married women and narrowing their legal limitations do not in general authorize actions or suits between husband and wife. But for the fact that the parties to the present suit are husband and wife, the natural remedy for the wrong alleged in the bill would be an action at law to recover the money said to be due to the plaintiff. Such action at law cannot be maintained between husband and wife. * * * That is the general rule. * * * It is only by establishing some special ground for equitable relief * * * that an exception to that general rule can be recognized."

Here, the petitioner alleged facts, which, if established, would entitle her to injunction, discovery, accounting and

recovery of personal property. Injunction, discovery and accounting are all matters of equitable cognizance. A court of equity, having once assumed jurisdiction of a case, will retain the case to afford complete relief. In a proper case, it will afford monetary relief. (19 Am. Jur., *Equity*, §§ 125-127; 30 C. J. S., *Equity*, §§ 67-68) Thus, the trial court had jurisdiction to hear this case.

There are two parts to the instant decree, namely, an adjudication of contempt of court and an adjudication requiring the respondent to pay $16,993.90 to the successor petitioner.

With regard to the adjudication of contempt, it is based on a finding that the respondent failed to abide by the terms of the restraining order filed on May 18, 1944. The restraining order restrained the respondent from in any way disposing of, sending away, spending, paying out or dealing with "one-half of the sum of $19,243.24 which you drew out of the joint account in the Bank of Hawaii of yourself and your wife," and also with the petitioner's five $1,000 United States war savings bonds, a 1940 De Soto sedan automobile, and certain items of jewelry, clothing and personal effects. The order was still in effect at the time of the trial, although more than ten years had elapsed since the date of its service upon the respondent.

A willful disobedience or neglect of any lawful process or order is contempt and a trial judge may impose summary punishment for such contempt. (R. L. H. 1955, § 269-1) The general rule at common law does not permit a review of a contempt proceeding on appeal. (12 Am. Jur., *Contempt*, § 80; 17 C. J. S., *Contempt*, § 112) In this jurisdiction, by statute, a judgment for civil contempt may be reviewed on appeal. However, such review is limited to questions of law. (R. L. H. 1955, § 269-5)

A proceeding for civil contempt has as its object the enforcement of an order made for the benefit of a private

party. The restraining order in this case is an order made for the benefit of the petitioner, a private party. Its violation constitutes civil contempt. In *Ando* v. *Ando*, 30 Haw. 80, this court, in reversing an adjudication of civil contempt, stated: "Whether there is in any case any substantial evidence, more than a mere scintilla, sufficient to support a finding of fact has been repeatedly regarded by this court as a question of law."

The restraining order in this case was issued, *ex parte*, without notice to the respondent, on the basis of the allegations in the petition and not on the basis of any finding that the respondent was in possession of the property mentioned therein at the time of its entry. The effect of the order was to restrain the respondent from doing the prohibited acts with regard to the mentioned property, or any part thereof, which was in his possession at the time of its service upon him. Thus, for a finding of a violation of the order, proof was required of the respondent's possession of such property, or any part thereof, at the time of the service of the restraining order and his subsequent disposition of such property.

The record on appeal does not contain such proof. There is a total lack of evidence that the respondent either possessed or disposed of the petitioner's bonds, jewelry, clothing and personal effects at any time. As for the automobile, the successor petitioner testified as follows:

"Q  Do you know where any of this property is?

"A  No, I don't. I know the car, she [petitioner] claimed the car.

"Q  Where is it?

"A  She took the car. Her past husband, he had it, sold it to him for $100, and I put the $100 into the estate."

There is no evidence as to who was meant by the petitioner's "past husband." The suggestion of death shows that the

petitioner was known as Paras Kovia Ing. The petitioner might have married a person named Ing after her divorce from the respondent and the reference might have been to the husband whom she thus subsequently married.

With regard to the sum of $19,243.24, the respondent stated in his amended answer "that most of the said sum has been reinvested" in his business. This is an admission of the withdrawal of the sum from the joint account. However, it does not show that the respondent was in possession of any part of the sum at the time of the service of the restraining order. He might have reinvested the sum before such service. Even if he had some part of the sum still in his possession when he was served with the restraining order, there is no proof that he disposed of, sent away, spent, paid out or otherwise dealt with the same after the service of the order upon him. After the service of the restraining order upon him, the respondent sold the business in which he allegedly invested most of the sum withdrawn from the joint account. But the restraining order did not restrain him from disposing of such business.

A clear and convincing proof of violation is required for a finding of civil contempt. (12 Am. Jur., *Contempt*, § 75; 17 C. J. S., *Contempt*, § 84) Here, there was not even a scintilla of evidence to show that the respondent violated the restraining order. It may also be noted that the adjudication of contempt in this case was made, *sua sponte*, by the trial judge without motion by the party for whose benefit the order was issued and without notice to the respondent. In *Rose* v. *Ashford*, 22 Haw. 469, this court held that a circuit judge was without jurisdiction to try a proceeding for constructive criminal contempt which was "not founded on an affidavit, complaint or information setting forth facts which, unexplained, would show a wilful disobedience or neglect on the part of the accused." If that is the rule with respect to criminal contempt, *a fortiori*,

it should be the rule with respect to civil contempt. In 12 Am. Jur., *Contempt,* § 69, it is stated: "In civil cases, although the proceedings are not strictly of a criminal character, inasmuch as they are very similar and their modes are summary and rigorous, it is held that where the contempt consists of the violation of an order made in a pending civil suit, the accused is entitled to a separate and distinct notice of the proceeding, either by information which substantially states the facts or by attachment serving like purpose." See, also, 17 C. J. S., *Contempt,* § 62, where it is stated: "It has been held that a proceeding for contempt to enforce a remedy in a civil action is a proceeding in that action, especially a contempt proceeding in a court of equity in aid of the court's original jurisdiction and in the enforcement of its decree; but it has been held that while the proceeding is auxiliary to the main case in that it proceeds out of the original case, it is essentially a new and independent proceeding in that it involves new issues and must be initiated by the issuance and service of new process."

Furthermore, R. L. H. 1955, § 269-5, formerly R. L. H. 1945, § 11144, provides: "Whenever any person is adjudged guilty of any contempt or sentenced therefor, the particular circumstances of the offense shall be fully set forth in the judgment and in the order or warrant of commitment, and, on appeal, exceptions, writ of error, habeas corpus or other proceedings for the review of the judgment, sentence or commitment, no presumption of law shall be made in support of the jurisdiction to render the judgment or pronounce the sentence or order the commitment." In adjudging the respondent guilty of contempt, the trial judge merely stated: "That the respondent, William James Tugaeff, failed to abide by the terms of the restraining order filed May 18, 1944." That is not a full statement of the particular circumstances of the offense required by the statute.

For the reasons stated above, that portion of the decree adjudging the respondent in contempt cannot stand.

With regard to the adjudication requiring the respondent to pay $16,993.90 to the successor petitioner, it is based on a finding that the respondent failed to account to the petitioner for $10,327.00 out of the amounts withdrawn by the respondent from their joint account at Bank of Hawaii. The total sum adjudged to be payable is made up of the mentioned sum of $10,327.00, interest thereon at the rate of six per cent per year from May 18, 1944, to February 3, 1955, amounting to $6,635.10, and costs of court of $31.80.

In her petition, the petitioner sought, in addition to a temporary injunction as embodied in the restraining order, an accounting of her share in the business conducted under the name of Tugaeff Flooring Service; appointment of a receiver to take possession of and liquidate such business; discovery of the books, accounts and assets of such business; discovery and recovery of her bonds, jewelry, clothing and personal effects, all alleged to be hidden by the respondent; and payment to her of one-half of $19,243.24 withdrawn by the respondent from their joint account at Bank of Hawaii.

The trial was held in the absence of the petitioner and the respondent. The petitioner was unavailable because of her death before the trial. The respondent was in California and claimed inability to be present at the trial because of ill health. On the day set for the trial, the respondent's attorney asked for a continuance until the respondent was available. The court denied the request.

At the trial, the successor petitioner made no attempt to establish the petitioner's various claims for relief other than the claim to one-half of the amounts withdrawn from the joint account. She offered the following documents produced by officers of Bishop National Bank of Hawaii

at Honolulu (hereinafter referred to as Bishop Bank) and Bank of Hawaii in evidence, and the trial judge admitted them as bank records:

Exhibit A. Ledger sheet of account No. 45700 at Bishop Bank in the name of Mary M. Tugaff, showing a credit balance of $10,326.28 on December 18, 1943, and withdrawal of such balance on March 20, 1944.

Exhibit B. Ledger sheet of account No. 119865 at Bank of Hawaii, originally in the name of Mary M. Tugaff, and later, on March 21, 1944, changed to a joint account in the names of Mary M. Tugaff and Wm. Tugaff, showing a credit balance of $8,916.09 on February 23, 1944, a deposit of $10,327.15 on March 21, 1944, and withdrawals of $19,000.00 on March 23, 1944, and $243.24 on March 28, 1944.

Exhibit C. Withdrawal order for $19,000.00 from account No. 119865 at Bank of Hawaii, dated March 21, 1944, bearing the signature of Wm. Tugaff.

Exhibit D. Memorandum copy of withdrawal order for $243.24 from account No. 119865 at Bank of Hawaii, dated March 27, 1944, bearing conformed signature of Wm. Tugaff. The following notation appears on the copy: "Original with Mr. Bailey to Court."

Exhibit E. Deposit slip dated March 20, 1944, showing deposit of $10,327.15, consisting of two items, $0.87 and $10,326.28, by Mary M. Tugaff in account No. 119865 at Bank of Hawaii.

The respondent contends that the trial judge erred in admitting these documents in evidence. At the trial, the respondent's attorney raised the objection that a proper foundation had not been laid for their admission. Here, on this appeal, the respondent advances the contention that the documents were not tied up with the petitioner and the respondent in that no proof was made that the petitioner and the respondent were the persons whose names appeared on the documents.

We see no error in the admission of exhibits A, B, C and E. They were properly admitted in evidence under R. L. H. 1945, § 9902, now incorporated in R. L. H. 1955, § 224-26, as business records made in the regular course of business. There was no testimony that the petitioner and the respondent were the persons whose names appeared on the documents. But other evidence tied up the documents with the petitioner and the respondent.

The petitioner alleged in her petition that she deposited the earnings of Tugaeff Flooring Service in an account in her name at Bank of Hawaii; that the account was later changed to a joint account in her name and the name of the petitioner; that on March 23, 1944, there was $19,243.24 in the account; that on that day the respondent withdrew $19,000.00 from the account; and that on March 28, 1944, he withdrew the balance of the account. In his amended answer, the respondent did not deny those allegations but merely stated "that the various deposits of money made by petitioner to her accounts were of money earned solely by respondent; * * * that most of the said sum has been re-invested in the aforesaid business." By the quoted statements, the respondent impliedly admitted the alleged deposits and withdrawals.

An admission of fact need not be made specifically, but may be the result of clear implication from statements in a pleading. If the documents which were properly admitted in evidence are considered in connection with the petitioner's allegations and the respondent's admission of such allegations, it is clear that the persons whose names appeared on the documents were the petitioner and the respondent, although we note a slight difference in the spelling of the surname, being "Tugaff" on such documents and "Tugaeff" in all of the pleadings in this case.

The admission of exhibit D was improper. According to the notation therein, that document is only a memo-

randum copy of an original record which had previously been taken to court. There is no proof that the copy was made in the regular course of business of the bank or that it is a true copy of the original. However, the error is not material. The information contained in the document is admitted in the respondent's amended answer.

The documents admitted in evidence, together with the respondent's admission in his amended answer, established the following facts: that there was an account in the name of petitioner at Bishop Bank with a credit balance of $10,326.28; that there was also an account in the name of the petitioner at Bank of Hawaii with a credit balance of $8,916.09; that the petitioner closed out the account at Bishop Bank and deposited the amount withdrawn from such account in the account at Bank of Hawaii; that the account at Bank of Hawaii was changed into a joint account in the names of the petitioner and the respondent; that the respondent withdrew the entire sum deposited in the joint account; and that the amount in the joint account consisted of the amounts previously deposited at Bishop Bank and Bank of Hawaii in the name of the petitioner only.

Those facts, in themselves, do not establish the respondent's accountability to the petitioner for $10,327.00 out of the amounts withdrawn from the joint account. In adjudging the payment of such sum, plus interest and costs of court, the trial judge made no finding of fact other than that "the respondent failed to account to the petitioner the sum of $10,327.00 out of the funds deposited in the Savings Account at the Bank of Hawaii." For a finding of failure to account, there must first be a finding of an obligation to account. Nowhere did the trial judge disclose his process of reasoning whereby he reached the conclusion that the respondent was obligated to account to the petitioner for the mentioned sum.

At this point it is well to consider whether the trial judge complied with the requirements of rule 52 (a) of Hawaii Rules of Civil Procedure. The rule requires the trial judge to find the facts specially and state separately his conclusions of law thereon, or file an opinion or memorandum of decision stating the facts and his opinion of the law, in all cases tried upon the facts without a jury. The Advisory Committee of the Supreme Court of the United States on Rules for Civil Procedure stated, in commenting on the equivalent Federal rule, that "the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." (Moore's *Federal Practice,* 2d Ed., § 52.05 [1]) However, the findings must include "as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." (Barron and Holtzoff, *Federal Practice and Procedure,* § 1127) In *Kelley* v. *Everglades Drainage District,* 319 U. S. 415, the court, in vacating an order of a district court on the ground that the record on appeal lacked the findings of fact required under the Federal rule, held that the determinations of the district court must be supported by findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which the ultimate conclusion of law can rationally be predicated, and stated at page 420: "The findings in the present case fall short of that requirement. * * * It may be that adequate evidence as to these matters is in the present record. On that we do not pass, for it is not the function of this Court to search the record and analyze the evidence in order to supply findings which the trial court failed to make. Nor do we intimate that findings must be made on all of the enumerated matters or need be made on no others; the nature of the evidentiary findings

sufficient and appropriate to support the court's decision as to fairness or unfairness is for the trial court to determine in the first instance in the light of the circumstances of the particular case. We hold only that there must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion."

Judged by the standard set forth in *Kelley* v. *Everglades Drainage District,* which we adopt, the trial judge in this case failed to comply with the requirements of the rule. Because of such failure, we are in the dark as to the ground upon which he predicated the respondent's accountability for $10,327.00. We can only guess. Our quandary shows the importance, if not the necessity, of compliance with the rule. In *Skelly Oil Co.* v. *Hollaway,* 171 F. (2d) 670, it is stated: "The rule is intended to aid the appellate court by giving a clear understanding of the basis of the trial court's decision."

Where there is a failure to comply with the requirements of the rule, this court may summarily vacate the judgment and remand the case for appropriate findings. (*Kelley* v. *Everglades Drainage District, supra;* Moore's *Federal Practice,* 2d Ed., § 52.06 [2]; Barron and Holtzoff, *Federal Practice and Procedure,* § 1138) But compliance with the rule is "not a jurisdictional requirement of appeal." (*Hurwitz* v. *Hurwitz,* 136 F. [2d] 796) In *Schneiderman* v. *United States,* 320 U. S. 118, the court stated at page 129: "The pertinent findings of fact * * * are but the most general conclusions of ultimate fact. It is impossible to tell from them upon what underlying facts the court relied, and whether proper statutory standards were observed. If it were not rendered unnecessary by the broad view we take of this case, we would be inclined to reverse and remand to the district court for the purpose of making adequate findings." Here, also, although we may be in-

clined to remand the case to the trial judge for adequate findings, that is unnecessary because the record on appeal is devoid of sufficient evidence to establish the respondent's obligation to account for the withdrawals from the joint account, either on the trial judge's theory or the petitioner's theory.

As we have already stated, we can only make a guess as to the trial judge's theory because of the absence of adequate findings of fact. Our guess is that the trial judge concluded that the petitioner was entitled to $10,327.00 because that amount was derived from an account at Bishop Bank which was solely in her name. If such were the trial judge's reasoning, consistency required him to hold the respondent accountable for the balance of the withdrawals from the joint account. For such balance consisted of the amount that was in account No. 119865 at Bank of Hawaii before the account was changed to a joint account and at the time that it was in the petitioner's name only. But the trial judge did not hold the respondent accountable for such balance.

Nowhere did the petitioner claim that the account at Bishop Bank was her sole property. Her position was that she was entitled to one-half of the amounts withdrawn from the joint account because the withdrawal represented earnings of Tugaeff Flooring Service in which she had a one-half interest. She alleged in her petition that "the moneys earned from said business were deposited in the Bank of Hawaii in Honolulu in your petitioner's own name, and later said account was changed to a joint savings account in said Bank and your petitioner is advised and informed, and so alleges, that on March 23, 1944, there was $19,243.24 in said joint account, one-half of which is your petitioner's separate property." Such being the petitioner's position, in order to sustain her claim, there must be proof that the petitioner had an interest in Tugaeff

Flooring Service. As the claim to an interest in the business was made by the petitioner, the successor petitioner had the burden of establishing such claim by a preponderance of evidence. The evidence showed that the license for the business was originally issued to the respondent and his brother, George Tugaff; that later the license was issued to the respondent alone; that the business was conducted at the residence of the petitioner and the respondent on Campbell Street, Honolulu; that the respondent sold the business to one Takeshi Nishimura in 1952 for $5,000; that at the time of the sale, all equipment and the truck used in the business were in the name of the respondent; and that after the sale, the petitioner made no claim upon the purchaser for any part of the sales price of the business. The only evidence purporting to show the petitioner's interest in the business consisted of the answer of the successor petitioner, to leading questions of her attorney, that the petitioner used to take messages on the telephone, did bookkeeping, ordered materials and made collections. We do not think that such evidence is sufficient to sustain the burden of proof that rested on the successor petitioner. Such actions might show that the petitioner did somewhat more than what a wife would normally do to assist her husband, but not very much more, particularly when the business was conducted from the home. They fall far short of establishing that the petitioner had an interest in the business.

On this appeal, the successor petitioner attempts to support the adjudication neither on the trial judge's theory nor on the petitioner's theory, but on a theory based on the statute relating to joint bank accounts, now incorporated in R. L. H. 1955, §§ 178-91. The statute provides that when a bank account is opened in the names of the depositor and another person and in form to be paid to either or the survivor, the account becomes the property

of such persons as joint tenants. It is modeled after a New York statute construed in *Marrow* v. *Moskowitz,* 255 N. Y. 219, 174 N. E. 460, where the court stated:

"When a bank account is opened in the form prescribed by statute * * *, a presumption at once arises that the interest of the depositors is that of joint tenants. Upon the death of one of the depositors, this presumption becomes conclusive in favor of the survivor in respect of any moneys then left in the account. It continues to be a mere presumption in respect of any moneys previously withdrawn.

"The moneys now in controversy were no longer in the account at the death of Mrs. Manheimer [defendant's testatrix]. They had been taken out during her life. The withdrawal did not destroy the joint tenancy or the title of the survivor, if a joint tenancy had been created. It did, however, open the door to competent evidence, if any was available, that the tenancy created at the opening of the account was in truth something different from the tenancy defined by the presumption. It had no other force."

This court, in *Woodward* v. *Auyong,* 34 Haw. 597, followed the New York court, and stated: "Where an account is opened in the form prescribed by the statute, in the absence of evidence to the contrary, the presumption immediately arises that the interests of the codepositors are those of joint tenants. Where it appears, however, that the rights of the codepositors have been otherwise limited or modified as between themselves, the terms of the deposit as to the rights of the codepositors between themselves become merely evidentiary."

It is the contention of the successor petitioner that a presumption of joint tenancy between the petitioner and the respondent arose when the account at Bank of Hawaii was changed into a joint account; that the respondent

failed to overcome that presumption; that as a joint tenant the petitioner had a one-half interest in the account when the respondent made the withdrawals therefrom; and that the petitioner was, therefore, entitled to one-half of the amounts withdrawn. The difficulty with that contention is that it does not accord with the realities of ownership as alleged by the petitioner. The petitioner did not base her claim on her right as a joint tenant. By a specific allegation, she based her claim on her alleged interest in Tugaeff Flooring Service. The successor petitioner failed to establish the petitioner's claim to one-half interest in the business. The claim to one-half interest in the joint account fell with such failure.

The meaning of the presumption of joint tenancy that arises upon the opening of a joint bank account under the New York statute, and the extent of the operation of such presumption on the withdrawals therefrom during the lifetime of the persons in whose names it was opened, is explained by Judge Cardozo in *Moskowitz* v. *Marrow,* 251 N. Y. 380, 167 N. E. 506, as follows: "A presumption, to be sure, there is that the form of the deposit, unqualified by agreement, is an accurate expression of the realities of title. The presumption is no longer subject to be rebutted — the form, in the words of the statute, becomes 'conclusive evidence' of the intention — when one of the depositors dies with the deposit still intact. But except after death, or in circumstances where prejudice would result to a bank acting without written notice of a countervailing interest, the true agreement may be proved, though in providing it there is a departure from the terms of the presumption. Even the bank is not protected in its payments to the same extent or in the same circumstances that protection would result if the deposit were a joint tenancy in every sense and for every purpose. It is protected in the absence of written notice that it is 'not to pay such deposit in accord-

ance with the terms thereof.' When such notice is given and a contest in the courts ensues during the joint lives of the depositors, distribution is to be determined, not solely by the terms of the deposit, which then cease to be conclusive, but by the realities of ownership."

Thus, the adjudication requiring the respondent to pay $16,993.90 to the successor petitioner also cannot stand.

Question remains whether this court should finally dispose of the case or remand it with direction to the trial judge to grant a new trial. Under the principle established by prior decisions, we may not render final judgment on reversal if we are of the opinion that other evidence may be produced on a new trial or are unable to say that such evidence cannot be produced. (*Mid-Pacific Dress Manufacturing Company, Limited* v. *Cadinha,* 33 Haw. 456; *In re Nelson,* 26 Haw. 809; *Territory* v. *Howell,* 25 Haw. 320) The successor petitioner may have difficulty in producing additional evidence to establish the claims for relief set forth in the petition in view of the death of the petitioner. We cannot say that she will be unable to do so.

Reversed and remanded with instruction to the trial judge to grant a new trial.

*E. C. Peters* (also on opening brief; *J. Harold Hughes* with him on reply brief) for appellant.

*Francis I. Tsuzuki* (*Ralph S. Inouye* and *Ralph F. Matsumura* with him on the brief) for appellee.