**EDMUND STILES MURRAY, Plaintiff-Appellant, _v._
LORRAINE MURRAY, Defendant-Appellee**

NO. 5788

DECEMBER 19, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This appeal is from an order of the family court finding appellant in contempt and ordering his confinement for failure to pay alimony. There was no finding that appellant was able to pay the sum required to avoid confinement. We vacate the order and remand.

By a decree of absolute divorce, appellant was ordered to pay appellee, his former wife, alimony of $300 per month. Subsequently, appellant obtained an order to show cause why the alimony order should not be modified, and thereafter appellee obtained an order to show cause why, _inter alia_, appellant should not be held in contempt for failure to make the alimony payments required under the existing decree.

The orders to show cause were consolidated for purpose of hearing. The parties stipulated and the court found that, as of

the date of the hearing, appellant was $9,700 in arrears in alimony payments. The family court made additional findings relating to appellant's financial situation.[1] These led to the ultimate finding that appellant's default was contumacious conduct and the adjudication that appellant was in contempt of court. The contempt order fixed fifteen days in Halawa jail as punishment for the contempt, but provided that mittimus would be stayed if appellant paid $5,450 to appellee. Appellant did not comply and mittimus issued. This appeal followed and we granted appellant's motion for a stay pending appeal.

In our view of the case, whether the family court properly ordered appellant confined depends upon whether the order was for civil or criminal contempt. Since we conclude that the order punished appellant for a criminal contempt and appellant was not charged and tried as required by HRS § 710-1077, we set aside the order of confinement.

---

[1] Since these findings are important to the disposition of this case they are set forth below. The findings were based on evidence by way of the testimony of appellant and appellee, and by exhibits and documents including plaintiff's tax returns for a three-year period, and the corporate tax returns of the State Insurance Agency, plaintiff's business, for the same period.

(1) The plaintiff has totally mismanaged his financial affairs, misusing various moneys entrusted in him in the course of his business and failed to provide the Court with sufficient explanation as to the disposition of those funds.

(2) The tax returns of State Insurance Agency, Inc., of which the plaintiff is the president, general agent, manager, and up until early 1973 the sole stockholder, indicate total gross profits of $19,720.12 for 1972, $39,877.43 for 1971 and $46,513.54 for 1970, even though the plaintiff claimed he was ill during much of this period and even though he alleges his illness and the resultant physical condition limited his business activity then and presently.

(3) The plaintiff and his wife used $5,000 in 1973 for a vacation to Japan even though plaintiff recognized his financial obligations and acknowledged arrearages under existing Court orders.

(4) There is no evidence to indicate that the transfer of the total stock of State Insurance Agency, Inc., from the plaintiff to his present wife, purportedly in consideration for moneys to discharge debts, was a *bona fide* transfer since the money used to settle the debts came directly and solely from the assets of plaintiff's present wife as opposed to joint assets.

(5) The plaintiff is, out of an undisclosed source of income, voluntarily making monthly payments of $288 on his mother's property situated at 712 Kihapai Street, Kailua, Oahu, Hawaii.

(6) The plaintiff has generally maintained the same standard of living over the last four years without adequately explaining the source of his income to this Court.

The critical question is whether appellant was ordered confined for the purpose of coercing him to pay the delinquent alimony or to punish him for his delinquency. *Hawaii Public Employment Relations Board (HPERB) v. Hawaii State Teachers Association*, 55 Haw. 386, 520 P.2d 422 (1974); *Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418 (1911). Civil contempt is remedial whereas criminal contempt is punitive in purpose. The significant and essential characteristic of a sanction imposed for civil contempt is that the penalty can be avoided by compliance with the court order. *Gompers, supra*. See also Note, The Coercive Function of Civil Contempt, 33 U. Chi. L. Rev. 120 (1965). Ability to comply must exist as a matter of substance as well as form. As was said in *Maggio v. Zeitz*, 333 U.S. 56, 72 (1948), "to jail one for a contempt for omitting an act he is powerless to perform would . . . . make the proceeding purely punitive, to describe it charitably." In that case it was held that willful disobedience of a turnover order in a bankruptcy proceeding would not support a civil contempt sanction where the bankrupt no longer was in possession of the goods and able to comply with the order at the time he was ordered imprisoned for noncompliance.[2] Thus an order which is in form coercive must be read as punitive, and as punishment for a criminal contempt, if the defendant lacks the ability to avoid the penalty when the sanction is imposed.[3]

This rule is clearly applicable to civil contempt commitment orders which are premised on failure to pay alimony or child support. *Lundregan v. Lundregan*, 252 F.2d 823 (D.C. Cir. 1958), *Truslow v. Truslow*, 212 A.2d 763, 764-65 (D.C. Ct.

---

[2] By footnote, contempt orders for failure to pay alimony are characterized as "illustrating rules of evidence concerning ability to comply" similar to those laid down in bankruptcy. 333 U.S. at 74, n.7. See also *Oriel v. Russell*, 278 U.S. 358, 364-65 (1929).

[3] As we recognized in *HPERB*, the penalty may be fixed in the court order which creates defendant's obligation, as well as in a subsequent coercive order. Where an injunctive order provided that a fine in a fixed amount would be imposed in the event of a violation, the subsequent imposition of the fine was for a civil contempt although the defendant was not able to avoid the penalty by rectifying the past noncompliance.

of App. 1965), *Spabile v. Hunt,* 134 Vt. 332, 360 A.2d 51 (1976), *In re SLT,* 180 So.2d 374 (Fla. Dist. Ct. of App. 1965), *Noorthoek v. Superior Court of San Luis Obispo County,* 75 Cal. Rptr. 61 (Ct. of App. 2d Dist., Div. 4 1969).

> "The rule is equally well established that the original underlying order for payment of support and the commitment order itself must rest upon the indispensable finding that at the date of issuance of these orders, the husband had failed or refused to maintain his wife and minor child *although able to do so." Truslow v. Truslow, supra* at 764-65.

These distinctions are incorporated into HRS § 710-1077, which defines criminal contempt of court as including intentional disobedience of any mandate of a court and which provides in part as follows:

> "(6) Nothing in this section shall be construed to alter the court's power to punish civil contempt. When the contempt consists of the refusal to perform an act which the contemnor has the power to perform, he may be imprisoned until he has performed it. . . ."

It was pointed out in *Shillitani v. United States,* 384 U.S. 364, 371 (1966), that it is the conditional nature of the imprisonment which justifies the omission in civil contempt proceedings of the constitutional safeguards applicable to criminal proceedings, and that such justification depends upon the ability of the contemnor to comply with the court's order. We do not reach the constitutional question in view of the clear mandate, which we read in HRS § 710-1077, that refusal to perform an act which the contemnor is without ability to perform must be punished as criminal rather than civil contempt.[4]

---

[4] HRS § 706-644 provides for imprisonment of a defendant for contumacious default in payment of a fine. Although the commentary to § 706-644 analogizes such imprisonment to cases of civil contempt, the analogy is not exact. We view a commitment under § 706-644 as an aspect of criminal sentencing, and not as a civil contempt sanction. We express no opinion on whether the ability of a defendant to pay a fine at the time of commitment is a prerequisite to imposition of the sanctions provided by § 706-644.

We recognize that, in many jurisdictions, financial inability to comply with an alimony or support order has not been recognized as a defense against imposition of civil contempt sanctions where the court saw an earlier willful and contumacious refusal to comply with the order. The rationale of this departure from the principle enunciated in *Maggio* is not clearly expressed. See, *e.g.*, *Hembree v. Hembree*, 271 S.W. 1100 (Ct. of App. Ky. 1925), *Bradshaw v. Bradshaw*, 133 S.W.2d 617 (Ct. of App. Tenn., Middle Section 1939), *Orr v. Orr*, 192 So. 466 (Fla. 1939), reiteration *in dicta*, *Faircloth v. Faircloth*, 339 So. 2d 650 (Fla. Sup. Ct. 1976), *Stanhope v. Pratt (dicta)* 533 S.W.2d 567 (Mo. Sup. Ct. *en banc*), *In re the Marriage of Vanet*, 544 S.W.2d 236 (Mo. Ct. of App. Kansas City 1976), *Nelson v. Nelson*, 357 P.2d 536 (Ore. 1960), *Sorrell v. Superior Court*, 56 Cal. Rptr. 222 (Ct. of App. 1st Dist. 1967), *Spabile v. Hunt*, 360 A.2d 51 (Sup. Ct. of Vt. 1976), *Fambrough v. Cannon*, 144 S.E.2d 335 (Ga. Sup. Ct. 1965). This court has indicated its concurrence in the view that present inability is a good defense only where contumacious noncompliance was not present, but this was well before the enactment of HRS § 710-1077. *Tugaeff v. Tugaeff*, 42 Haw. 455, (1958); *Chong v. Chong*, 35 Haw. 69 (1939), 35 Haw. 541 (1940); *Ando v. Ando*, 30 Haw. 80 (1927).

In determining whether an alleged contemnor was properly imprisoned for civil contempt, the focus of inquiry is more accurately described in *Barrett v. Barrett*, 368 A.2d 616 (Pa. 1977).

"[T]he crucial question is not whether he willfully and contemptuously violated the original orders, but whether he had the present ability to comply with the conditions set by the court for purging himself of his contempt." 368 A.2d at 620.

In *Barrett*, the Pennsylvania Supreme Court went on to hold that where the court in civil proceedings finds there has been willful noncompliance with its earlier support orders but the contemnor presents evidence of his present inability to comply and make up the arrears, the court in imposing coercive imprisonment should set conditions for purging the contempt and effecting the release from imprisonment with which it is

is convinced, from the totality of evidence before it, the contemnor has the present ability to comply.[5]

We interpret the order of the family court as providing for appellant's release from confinement upon his payment at any time of the sum of $5,450. The family court made no finding of appellant's financial ability to pay this sum. It stated only that "the court finds the plaintiff's being in arrears in alimony payments ordered by the Court is contumacious conduct and adjudges the plaintiff in contempt of court"[6] and at the time that the fifteen day imprisonment was imposed simply that appellant was "in contempt of court".[7] The record does not enable us to make this determination without the aid of such a finding.

In the absence of the indispensable finding that the contemnor possessed present financial ability to comply with the condition set by the court for his release from confinement, the order calling for imprisonment of the plaintiff must be regarded as punitive rather than coercive, and cannot be sustained as a civil contempt sanction. Where the imprisonment is punitive either by design or in effect, the proceeding must meet the stricter procedural standards of criminal contempt. We vacate the order and remand for further proceedings consistent with this opinion.

*Helen B. Ryan (Ryan & Ryan* of counsel) for plaintiff-appellant.

*Philip D. Bogetto* for defendant-appellee.

---

[5] It was stated in *Barrett* that the court should be convinced beyond a reasonable doubt that the alleged contemnor has present financial ability. We do not share that court's view as to the standard of proof. In civil contempt proceedings we have held that the appropriate standard is that of clear and convincing proof. *Tugaeff v. Tugaeff, supra*, 42 Haw. at 461.

[6] Decision and Order of August 29, 1974.

[7] Decision and Order of October 31, 1974.