HAWAII PUBLIC EMPLOYMENT RELATIONS BOARD, STATE OF HAWAII, Plaintiff-Appellee, *v.* HAWAII STATE TEACHERS ASSOCIATION, ET AL., Defendants-Appellants

NO. 5460

MARCH 25, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI and OGATA, JJ., and CIRCUIT JUDGE VITOUSEK ASSIGNED TEMPORARILY BY REASON OF VACANCY

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by the Hawaii State Teachers Association (hereinafter referred to as HSTA or appellants) from a judgment of the court below adjudging HSTA to be in civil contempt for the violation of said court's preliminary injunc-

tive order issued on October 20, 1972,[1] and the imposition of a fine for said contempt.

## FACTS

1. On October 13, 1972, the Board of Education (hereinafter referred to as BOE) filed a charge with the Hawaii Public Employment Relations Board (hereinafter referred to as HPERB), alleging that HSTA had failed to bargain in good faith.

2. On October 20, 1972, the court below issued the above mentioned preliminary injunction. HSTA was enjoined, *inter alia,* from striking on October 24, 1972.

3. On October 31, 1972, HSTA filed a notice of impasse with HPERB, alleging that an impasse existed between the bargaining parties.

4. On December 21, 1972, HPERB issued its decision which found that HSTA was guilty of failure to bargain and that the parties were at an impasse.

5. On January 12, 1973, BOE filed an appeal from HPERB's finding of the existence of an impasse with the circuit court.

6. On March 29, 1973, the circuit court[2] reversed HPERB's finding of an impasse on the ground that HSTA had failed to bargain in good faith, and that therefore without good faith bargaining on the part of HSTA, there could be no finding of an impasse.

7. On March 30, 1973, HPERB attempted to obtain a second injunction in an effort to halt a threatened strike by HSTA called for April 2, 1973. The court below refused to issue the requested injunction, stating in effect that it considered its prior preliminary injunction of October 20, 1972, to be still in effect. The court also refused to rule at that time as to whether the impending strike of April 2, 1973, would be a

[1] *See* Hawaii Pub. Emp. Rel. Bd. *v.* Hawaii State Teachers Ass'n, 54 Haw. 531, 511 P.2d 1080 (1973).

[2] Bd. of Educ. v. Hawaii Pub. Emp. Rel. Bd. and Hawaii State Teachers Ass'n, Civil No. 38416, first circuit court, Judge Norito Kawakami presiding.

violation of the October 20, 1972 preliminary injunction.[3] The court below expressed the belief that the preliminary injunction of October 20, 1972, was still viable and that the specific question was not before the court.

8. On April 2, 1973, HSTA went ahead with its strike.

9. On April 13, 1973, HSTA was adjudged in *civil* contempt of court and fined in accordance with the terms[4] of the preliminary injunction issued on October 20, 1972.

10. On June 15, 1973, HSTA appealed the validity of the contempt order and fines totalling $190,000.00.[5]

---

[3] In denying the second injunction, the circuit court stated in part:

I am not in a position now to make a definitive determination on whether, let's say a strike Monday is impermissible under my injunction or not. That issue is not before me, not presented to me . . . .

[4] The preliminary injunction order issued by the circuit court on October 20, 1972, reads in relevant part:

(3) Subject to the provisions of paragraph (8), the HSTA shall not authorize or declare any further or other strike for the duration of the contract of February 29, 1972, except such strike as may be authorized and proceeded with in good faith in compliance with the provisions of Section 89-12(b) of Chapter 89 of the Hawaii Revised Statutes (including a strike which results from an impasse and is provided for in Article XXIII-B of said contract.) In particular, and without limiting the generality of the foregoing, the HSTA shall not authorize or declare any further or other strike pursuant to any action taken by teachers at meetings held by the HSTA on October 5, 1972. Violation of this paragraph (3) shall result in continuing violation if non-compliance is prolonged beyond one day.

. . . .

(6) In the event of violation of this order . . . the HSTA shall be fined the sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00). And if the violation is a continuing one, the HSTA shall be fined TEN THOUSAND DOLLARS ($10,000.00) for each additional full day of continued violation. The foregoing provision as to the fines which shall be imposed on the HSTA in the event of violation does not mean, and it shall not be construed to mean, that the imposition of other or further sanctions or penalties allowable under law, whether on the HSTA or others in the event of violations of this order, is precluded.

. . . .

(8) This order shall be in effect until final judgment, inclusive of any appellate proceedings, is entered on the main complaint for a permanent injunction in this cause.

[5] The Order Adjudging Defendant HSTA in Contempt and Imposing Fines, Ordering HSTA Board to Revoke Strike Authorization, and Setting Further Hearing reads in part:

(1) Defendant HSTA is in violation of said Order Granting Preliminary Injunction issued herein on October 20, 1972, and is thereby in *civil contempt of this Court*. (Emphasis added.)

The court below made the following determination prior to adjudging HSTA to be in contempt:

(a) That this Court on October 20, 1972, issued the Order Granting Preliminary Injunction in this cause;

(b) That judicial notice is taken of the record and proceedings in The Board of Education, State of Hawaii, vs. The Hawaii Employment Relations Board and The Hawaii State Teachers Association, being Civil No. 38416 in this Court;

(c) That judicial notice is taken of the fact that there is now in progress and has been in progress beginning on April 2, 1973, a strike authorized by the Hawaii State Teachers Association (herein referred to as "HSTA") by personnel in the bargaining unit which the HSTA represents;

(d) That said strike is in violation of and prohibited under Section 89-12(b) of Chapter 89 of the Hawaii Revised Statutes;

(e) That HSTA's authorization of said strike is, as a matter of law, not in good faith compliance with the provisions of said Section 89-12(b) from and after the date of the Judgment of this Court rendered in said Civil No. 38416; and

(f) That the instant proceeding is a proceeding in civil contempt.

## ISSUES

I. Whether HSTA violated the October 20, 1972 preliminary injunction issued by the circuit court.

II. Whether there existed an impasse between HSTA and BOE.

(2) Defendant HSTA is fined as follows:

(a) ONE HUNDRED THOUSAND DOLLARS ($100,000) for the violation occurring on April 2, 1973; and

(b) TEN THOUSAND DOLLARS ($10,000) for each day of the duration of said strike, commencing with April 3, 1973; provided that this per-day fine is imposed only with respect to regularly scheduled work days for the members of the bargaining unit represented by the HSTA . . . .

III. Whether the court action below was a proceeding in criminal or civil contempt.

IV. Whether, if a fine is appropriate, there is any justification for mitigating the total contempt fine of $190,000.00.

## I. WHETHER HSTA VIOLATED THE OCTOBER 20, 1972 PRELIMINARY INJUNCTION.

In *Hawaii Public Employment Relations Board v. Hawaii State Teachers Association*, 54 Haw. 531, 511 P.2d 1080 (1973), we held that the preliminary injunction dated October 20, 1972, was a valid, lawful order of the court below. The said injunctive order provided, in pertinent parts, the following:

A. . . . HSTA shall not authorize or declare any further or other strike for the duration of the contract of February 29, 1972, except such strike as may be authorized and proceeded with in good faith in compliance with the provisions of [HRS] Section 89-12(b) . . . ;

B. This order shall be in effect until final judgment, inclusive of any appellate proceedings, is entered in the main complaint for a permanent injunction in this cause.

There is no doubt that the contract of February 29, 1972, between HSTA and BOE was to run through August 31, 1974.

HSTA's appeal contesting the validity of the said preliminary injunction of October 20, 1972, was not concluded until after June 28, 1973.

A final judgment has never been entered "on the main complaint for permanent injunction".

Therefore, we are of the opinion that unless HSTA can show that its strike of April 2, 1973, comes within the above exception in compliance with HRS § 89-12(b),[6] the action of HSTA would be violative of the said preliminary injunction.

---

[6] HRS § 89-12(b) reads as follows:

(b) It shall be lawful for an employee, who is not prohibited from striking under paragraph (a) and who is in the appropriate bargaining unit involved in an impasse, to participate in a strike after (1) the requirements of section 89-11 relating to the resolution of disputes have been complied with in good faith, (2) the proceedings for the prevention of any prohibited practices have been exhausted, (3) sixty days have elapsed since the fact-finding board has made public its findings and any recommendation, (4) the exclusive representative has given a ten-day notice of intent to strike to the board and to the employer.

## II. WHETHER THERE EXISTED AN IMPASSE
### BETWEEN HSTA AND BOE.

Within the context of the instant case, Judge Kawakami's ruling is determinative on the question of whether an impasse existed between HSTA and BOE. In a separate proceeding wherein HSTA was a party, as we have noted in footnote numbered 2, Judge Kawakami ruled that ". . . H-PERB may not declare an impasse, . . . unless it finds the existence of the precondition (good-faith negotiations) at least on the part of the party claiming the right to strike'', and did set aside the decision of HPERB that impasse existed between HSTA and BOE.

In the contempt proceedings below, the trial court took judicial notice of the record and proceedings of the legal proceedings had before Judge Kawakami. On this appeal there is no showing that Judge Kawakami lacked jurisdiction over the subject matter or over HSTA.

We are of the opinion that HSTA was bound by the lawful order of Judge Kawakami, notwithstanding the fact that an appeal on said order was under consideration by this court.

The United States Supreme Court in *Howat v. Kansas,* 258 U.S. 181, 189-90 (1922), stated:

> An injunction duly issuing out of a court of general jurisdiction with equity powers upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case. It is for the court of first instance to determine the question of validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its order based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.

*See also United States v. United Mine Workers,* 330 U.S. 258 (1947).

Thus, HSTA acted at its peril and is in clear violation of the preliminary injunctive order of October 20, 1972.

## III. WHETHER THE COURT ACTION BELOW WAS A PROCEEDING IN CRIMINAL OR CIVIL CONTEMPT.

The distinction between civil and criminal contempt is not always clear. However, several distinguishing characteristics of each may be observed. Sentences or fines for criminal contempt are punitive in nature. *United States v. Schine,* 125 F.Supp. 734 (W.D.N.Y. 1954); *In re United Corporation,* 166 F.Supp. 343 (D. Del. 1958). Criminal contempts are crimes and the accused is entitled to the benefit of all constitutional safeguards, and cannot be convicted except by proof beyond a reasonable doubt, and cannot be compelled to testify against himself. *United States v. P. & W. Coat Co.,* 52 F.Supp. 792 (E.D.N.Y. 1943). Intent is an essential element of a criminal contempt and must be established beyond a reasonable doubt. *United States v. Univis Lens Co.,* 88 F.Supp. 809 (S.D.N.Y. 1950).

On the other hand, in civil contempt proceedings, the question is not one of intent but whether alleged contemnors have complied with the court's order. *N.L.R.B. v. Lawley,* 182 F.2d 798 (5th Cir. 1950). Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance and may be imposed for prohibited acts irrespective of intent. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187 (1949). The United States Supreme Court stated in *United States v. United Mine Workers, supra,* at 303-04:

> Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order and to compensate complainant for losses sustained.

In the case before us, the sanctions provided for in the injunctive order are clearly conditional. Only the violative conduct of HSTA makes the imposition of the sanction possi-

ble. Thus, the effect is a coercive one. HSTA is clearly warned not to start a strike in violation of the injunction. If HSTA does start a strike a fine of $100,000 is imposed. And, again coercively but conditionally, only if HSTA prolongs the strike, each additional day of strike brings an imposition of an additional fine of $10,000 a day.

We are of the opinion that the sanction provided for in the herein injunctive order is clearly for the purpose of coercing HSTA into complying with the said order of the court and the proceedings below was one of civil contempt.

### IV. MITIGATION OF THE FINES.

The final question is whether the circumstances herein warrant a mitigation of the amount of the fines levied against HSTA.

In the instant case, there is no doubt HSTA acted as the "legal trail-blazer" in an uncharted, complicated, new legal field of collective bargaining among the public employees in the State of Hawaii.

Because of the appellate proceedings initiated by HSTA, this court is fully aware of the difficulties entailed in construing the various provisions contained in Chapter 89 of the Hawaii Revised Statutes.

We commend the trial court for its firm judicial hand in a difficult, sensitive situation involving thousands of people. We believe, however, the promotion of justice[7] would be better enhanced if the fines are reduced.

### CONCLUSION

The judgment of the court below is affirmed, but is remanded for the entry of an amended judgment reducing the fines to a total sum of $100,000.00.

*Thomas P. Gill (Gill & Pico* of counsel) for defendants-appellants.

*Sonia Faust* for plaintiff-appellee.

---

[7] HRS § 602-5(7) (Supp. 1973).