JOHN DOE, Plaintiff-Appellee,
v.
JANE DOE, Defendant-Appellant.
No. 28415,
No. 28498.
Intermediate Court of Appeals of Hawaii.
September 12, 2008.
On the briefs:
Steven J. Kim (Lynch Ichida Thompson Kim & Hirota), for Defendant-Appellant.
Charles T. Kleintop, Robert T. Nakatsuji, (Stirling & Kleintop), for Plaintiff-Appellee.

MEMORANDUM OPINION
WATANABE, Presiding Judge, FOLEY and FUJISE, JJ.
In this consolidated appeal, Defendant-Appellant (Wife) appeals from:
(1) The Second Amended Order filed on March 19, 2007 in the Family Court of the First Circuit (family court),[1] in which the court denied Wife's post-decree motion for the entry of an order (a) modifying the amount of child support agreed to by Plaintiff-Appellee (Husband) and Wife (collectively, the parties) in their Divorce Decree; (b) permitting Wife to seek administrative review and modification of child support by the Child Support Enforcement Agency (CSEA), and (3) requiring Husband to provide Wife and the family court with completed and signed income and expense and asset and debt statements.
(2) The "Order Regarding [Husband's] April 26, 2006 Motion and Affidavit for Post-Decree Relief" (Order Re April 26, 2006 Motion for Post-Decree Relief) filed on January 24, 2007 in the family court.[2] In the order, the family court held Wife in civil contempt of court for violating (a) a March 11, 2003 order by impeding Husband's custody of the parties' daughter (Daughter) on a day Husband was to have custody of her, and (b) a November 24, 2004 order to pay Husband $2,500 in attorney's fees and costs.
On appeal, Wife argues that the family court erred in
(1) denying her leave to seek administrative review and modification of child support through CSEA;
(2) holding her in civil contempt of court based upon
(a) her failure to pay a court-ordered sanction, as collection of a monetary judgment is ordinarily not a ground for contempt and because the sanction was and is pending on appeal, and
(b) its finding that Daughter was with her during Husband's custody day because the alleged contempt related to past conduct for which no present performance or avoidance of contempt could occur;
(3) denying her request that Husband pay her an amount equivalent to the income and principal distributions of five percent (5%) of Husband's interest in and to an Estate, which she argues she is entitled to as child support under the parties' Divorce Decree; and
(4) denying her request for an order requiring Husband to provide her and the family court with completed and signed income and expense and asset and debt statements, based in part on the fact that she did not seek an order increasing child support from the family court, but from the CSEA.
Wife requests that we vacate and reverse the family court's orders and remand the case to the family court for appropriate relief.

I. BACKGROUND
On July 17, 1996, the parties filed an Agreement Incident to Divorce re Custody and Visitation (7/17/96 AITD), in which the parties agreed that Wife was awarded sole legal and physical custody of Daughter. On July 23, 1996, the parties filed an Agreement Incident to Divorce (7/23/96 AITD) that incorporated the promises and covenants contained in the 7/17/96 AITD and addressed the remaining issues of their divorce (support, property division, and other financial issues).
On July 24, 1996, the family court[3] entered a Divorce Decree that (1) incorporated the 7/17/96 AITD and 7/23/96 AITD into the decree; (2) dissolved the marriage between Wife and Husband; (3) awarded Wife sole legal and physical custody of Daughter; (4) awarded Wife $4,000 per month in child support, payable directly to Wife by Husband on the first day of each month; and (5) divided and distributed the parties' property and debts.

A. Contempt order, custody
In the 7/17/96 AITD, the parties agreed, among other things, that Wife would have sole legal and physical custody of Daughter, but that Daughter would spend an agreed-upon amount of time with each parent. The 7/23/96 AITD provided in relevant part:
1. CUSTODY AND TIME SHARING OF [DAUGHTER]. All issues relating to the custody and time sharing of [Daughter] have been resolved by the parties' [AITD] signed and filed herein on July 17, 1996, the terms of which are incorporated herein by reference.
On August 16, 1999, the family court modified the custody arrangement to give the parties joint physical custody of Daughter.[4]
On March 11, 2003, the family court filed a "Stipulated Order Resolving Issues Raised in [Husband's] December 24, 2001 Motion for Post-Decree Relief and [Wife's] January 22, 2002 Affidavit of [Wife] in Opposition to [Husband's] Motion for Post-Decree Relief, Other Related Issues, and Issues Pending in Other Courts"[5] (Stipulated Order), which, inter alia, set forth the timesharing schedule of Daughter from October 2002 through June 2010. The order indicated that Husband was to have Daughter for the period April 16, 2006 to May 7, 2006.
On April 26, 2006, Husband filed a Motion and Affidavit for Post-Decree Relief (April 26, 2006 Motion for Post-Decree Relief), seeking, inter alia, "an order finding [Wife] to be in civil contempt" because Wife failed to return Daughter to Husband on April 16, 2006 and still had not returned Daughter to him "in deliberate violation" of the Stipulated Order.
The family court's Order Re April 26, 2006 Motion for Post-Decree Relief provided in relevant part:
5. The current custody and timesharing order in this case, the March 11, 2003 [Stipulated] Order, is clear and unambiguous on the custody dates and times for each parent and on the requirements that neither parent shall interfere with the parent-child relationship with the other parent and neither parent shall conceal [Daughter] from the other parent during the other parent's period of responsibility for [Daughter].
6. Paragraph 3(a) of the March 11, 2003 [Stipulated] Order contains a detailed list of the dates that each parent is to have custody of [Daughter].
7. In addition, the March 11, 2003 [Stipulated] Order has attached to it a calendar that graphically sets forth each day that each parent is to have [Daughter] in his or her custody.
8. Paragraph 3(b)(ii) of the March 11, 2003 [Stipulated] Order clearly states the exchange time on the days that custody changes. If the last overnight with the custodial parent is followed by a non-school day for [Daughter], the custodial parent's time with [Daughter] shall end at 10:00 a.m. The other custodial parent's time with [Daughter] shall then begin at 10:00 a.m. The custodial parent who is starting his or her time with [Daughter] at 10:00 a.m. or his or her designated agent shall then pick up [Daughter] at the other parent's home at 10:00 a.m. The parents may modify the exchange site by mutual agreement.
9. Paragraph 18(c)(xi) of the March 11, 2003 [Stipulated] Order provides that neither parent shall interfere with the parent-child relationship with the other parent and that neither parent shall conceal [Daughter] from the other parent during the other parent's period of responsibility for [Daughter].
10. On Easter Sunday, April 16, 2006, [Husband's] custody period with [Daughter] was to commence at 10:00 a.m.
11. On April 4, 2006, [Husband] gave notice to [Wife] that he would be willing to accommodate [Daughter] and [Wife] by picking up [Daughter] at church rather than at [Wife's] home on April 16, 2006.
12. [Wife] did not object to [Husband's] proposal that he pick up [Daughter] at church, nor did [Wife] propose anything different in writing to [Husband].
13. [Wife] did not have [Daughter] available for [Husband] to pick her up at [Wife's] home at 10:00 a.m. on April 16, 2006.
14. [Daughter] and [Wife] went to church on Easter Sunday, April 16, 2006, and the service continued past 10:00 a.m.
15. [Husband], however, was not able to pick up [Daughter] at church after the service, even though he appeared there and was ready to pick her up, because she wasn't there after the service.
16. [Wife] saw and was with [Daughter] at three (3) separate and distinct activities after 10:00 a.m. on Easter Sunday, April 16, 2006. [Wife] saw and was with [Daughter] at the . . . Club luncheon hosted by [Wife]. [Wife] saw and was with [Daughter] at a party at [Daughter's friend's] grandmother's residence later in the afternoon. [Wife] saw and was with [Daughter] at the . . . Club for dinner. [Wife] actively participated in each of these activities.
17. [Wife] did not inform [Husband] of [Daughter's] presence at any of these three (3) activities as the activities occurred.
18. While [Wife] asserts that it was [Husband's] responsibility to pick up [Daughter] and that she did not drive [Daughter] to any of these three (3) activities or back home that night, it is clear that [Wife] concealed [Daughter's] whereabouts from [Husband] when [Daughter] was at each activity on Easter Sunday and also the night following Easter.
19. [Wife's] own witnesses confirm that they heard no calls by [Wife] to [Husband] informing him where [Daughter] was.
20. [Wife] also did not instruct [Daughter] to call [Husband] from any of these three (3) social events.
21. [Wife] knows [Husband's] cellular telephone number, home telephone number, and e-mail address
22. There was no impediment to [Wife] notifying [Husband] where [Daughter] was so he could pick her up.
23. There was no impediment to [Wife] delivering [Daughter] to [Husband] herself.
24. There was no evidence that [Wife] diligently attempted to comply with the March 11, 2003 [Stipulated] Order in a reasonable manner.
25. Although [Husband] later, on Tuesday, April 18, 2006, through [Daughter's therapist] acquiesced in [Daughter] staying longer with [Wife] to avoid a confrontation and conflict with [Daughter] and [Wife], [Husband] did not waive his custody and timesharing rights under the March 11, 2003 (Stipulated] Order.
26. For all the above reasons, the Court finds by clear and convincing evidence that [Wife] violated the March 11, 2003 Order on April 16, 2006 in the manner indicated above and holds [Wife] in civil contempt of court.
. . . .
Now therefore,
IT IS HEREBY ORDERED as follows:
1. [Wife] shall comply with the March 11, 2003 [Stipulated] Order in the future. If she fails to comply with the March 11, 2003 [Stipulated] Order, [Wife] shall pay [Husband] a fine of $750.00 a day for each day that she fails to comply with the March 11, 2003 [Stipulated] Order in the above manner.
. . . .
5. The Court declines at this time to order incarceration for [Wife] because the Court expects [Wife] to comply with the Court's orders.
(Emphasis in original.)

B. Child support

1. 5% interest
As to child support, the 7/23/96 AITD provided in relevant part:
2. CHILD SUPPORT.
(a) Amount. Commencing on the fifth (5th) day of the first month immediately following the entry of the Divorce Decree herein Husband shall pay directly to Wife as and for the support, maintenance, and education of [Daughter] the sum of FOUR THOUSAND DOLLARS ($4,000) per month.
(b) Payment. Said sum shall be payable directly to Wife on the 1st day of each month, commencing on the 1st day of August 1996. Husband is self-employed as a trustee of [an Estate].
. . . .
(f) Trust Income. In addition to the said payments to be made by Husband, Wife acknowledges that:
(i) As sole Trustee of the [Trust], she shall have available to her for the benefit of [Daughter] the income and principal distributions of Five Percent (5%) of Husband's interest in and to [an Estate], all as provided for in that certain assignment by Husband dated November 30, 1992, a copy of which is attached hereto as Exhibit "3". Such income to Wife (for the benefit of [Daughter]) during 1995 totaled approximately $22,000.00. The parties expect that such trust income will continue at not less than that level.
(ii) The additional Five Percent (5%) assignment to her income only dated April 13, 1992 (see paragraph 3(b) below) was made by Husband at a time when she was pregnant with [Daughter].
(iii) Husband was motivated to make both assignments because of his concern for providing support for [Daughter] (as well as Wife, as [Daughter's] mother). The said November 30, 1992 assignment was in the nature of child support. The said April 13, 1992 assignment made out of love and affection to Wife was in the nature of family support. Both assignments should be considered exceptional circumstances in any current or future child support guidelines calculations.
. . . .
(i) Possible Future Revision. All of the provisions of this paragraph 2 (except for the provisions in subparagraph (f) which refer to an irrevocable transfer to Wife and which are not subject to revision or amendment) shall be subject to the further order of the Court.
As to child support, the Divorce Decree provided in relevant part:
9. CHILD SUPPORT.
(a) Amount. [Husband] shall pay directly to [Wife] as and for the support, maintenance, and education of [Daughter] the sum of FOUR THOUSAND DOLLARS ($4,000) per month.
(b) Payment. Said sum shall be payable directly to [Wife] on the 1st day of each month, commencing on the 1st day of August, 1996. [Husband] is self-employed as a trustee of [an Estate].
(c) Duration. Child support shall continue until [Daughter] attains the age of 18 years or graduates from or discontinues high school, whichever event occurs last[.]
. . . .
(f) Trust Income. In addition to the said payments to be made by [Husband], [Wife] acknowledges that as sole Trustee of the [Trust], she shall have available to her for the benefit of [Daughter] the income and principal distributions of Five Percent (5%) of [Husband's] interest in and to [an Estate], all as provided for in that certain assignment by [Husband] dated November 30, 1992 as more fully described in the parties' [7/23/96 AITD][.]"
On December 3, 1996, the family court filed a Minute Order,[6] which stated: "The Agreement re Custody provided that the parties were to divide the costs pursuant to line 6 of the child support guidelines. Child support was later approved to be set by way of a distribution from trust and not pursuant to the Child Support Guidelines."
In the Stipulated Order, Husband was prohibited from seeking a reduction in child support below $4,000 per month so long as the custody schedule set forth in the stipulated order remained in effect.
On October 19, 2006, Wife filed a "Motion for Order: (1) Re: Payment of Child Support Set Forth in Parties' Divorce Decree; (2) Permitting [Wife] to Seek Administrative Review and Modification of Child Support by CSEA; and (3) Requiring [Husband] to Provide [Wife] and the Court with Completed and Signed Income and Expense and Asset and Debt Statements" (Motion for Order). Wife requested, among other things, that the family court enter an order requiring Husband to pay her, in addition to the $4,000 per month child support set forth in the Divorce Decree, an amount equivalent to the income and principal distributions of five percent (5%) of Husband's interest in and to an Estate, which she argued was the amount of child support contemplated in the Divorce Decree.
On November 3, 2006, Husband filed his opposition memorandum.
On March 19, 2007, the family court entered the Second Amended Order denying Wife's request. The family court stated: "[Wife] requests a lump sum payment from the [Trust] in that [Wife] is no longer the [Trust] trustee; however, there is no evidence submitted that the current Trustee would not provide for [Daughter's] appropriate needs and benefit if requested."
On March 27, 2007, Wife moved the family court for reconsideration of the Second Amended Order (Motion to Reconsider Second Amended Order). On May 15, 2007, the family court entered an order denying Wife's Motion to Reconsider Second Amended Order and filed its Findings of Fact and Conclusions of Law (5/15/07 FOF/COL)[7] regarding, among other things, Husband's April 26, 2006 Motion for Post-Decree Relief. The findings and conclusions provided in relevant part:
II. FINDINGS OF FACT.
. . . .
12. In her October 19, 2006 Motion, [Wife] did not seek an order to have the Family Court increase [Husband's] child support amount, but instead sought an order that would allow the CSEA to do so.
13. [Daughter] is the beneficiary of a trust known as the [Trust].
14. Although [Wife] was the trustee of the [Trust] at the time of the parties' divorce, she was subsequently replaced as the trustee of the [Trust] by [Bank].
15. In her October 19, 2006 Motion, [Wife] requested a lump sum payment from the [Trust] because she was no longer the [Trust] trustee.
16. No evidence was submitted to the Court that the current trustee of the [Trust], [Bank], would not provide for [Daughter's] appropriate needs and benefit, if requested.
III. CONCLUSIONS OF LAW.
. . . .
8. Because there is no indication that [Bank], the current trustee of the [Trust], will not provide for [Daughter's] appropriate needs and benefit, if requested, [Wife's] request for a lump sum payment from the [Trust] is denied.
2. CSEA
In its November 30, 2004 Order, the family court prohibited Wife from seeking a future modification of child support by CSEA and required her to seek any such modification from the family court.
In her Motion for Order, Wife requested, among other things, that the family court enter an order permitting her to seek administrative review and modification of child support by CSEA. In its Second Amended Order, the family court denied Wife's request, stating:
6. On November 30, 3004, Judge Gregg Young granted [Husband's] Motion precluding [Wife] from using CSEA and requiring her to file motions regarding child support in Family Court.
7. [Wife] appealed Judge Young's Order. Said appeal is still currently pending with the appellate court. Judge Young's Order is the law of the case until such time as the appellate courts overturn the same.
Wife filed the Motion to Reconsider Second Amended Order. On May 15, 2007, the family court filed its order denying the motion and stated in its 5/15/07 FOF/COL:
II. FINDINGS OF FACT.
. . . .
3. On March 11, 2003, a Stipulated Order Resolving Issues Raised in [Husband's] December 24, 2001 Motion for Post-Decree Relief and [Wife's] January 22, 2002 Affidavit of [Wife] in Opposition to [Husband's] Motion For Post-Decree Relief, Other Related Issues, and Issues Pending in Other Courts (hereinafter "the March 11, 2003 [Stipulated] Order") was entered by this Court.
4. The March 11, 2003 [Stipulated] Order included a provision that specifically addressed child support and provided that [Husband] would not seek a reduction in his child support payments below the $4,000.00 a month he was then paying.
5. The issue of child support was thus clearly addressed by the Court in its March 11, 2003 [Stipulated] Order.
6. Paragraph 5(a) of the March 11, 2003 [Stipulated] Order gave [Husband] "full and exclusive decision-making authority" in the area of mental health care for [Daughter].
7. [Husband] has paid 100% of the mental health care for the child since the March 11, 2003 [Stipulated] Order.
8. In September of 2004, [Wife] initiated a child support review action with the [CSEA].
9. On November 30, 2004, the Honorable GREGG YOUNG, Judge of the above-entitled Court, entered his Order Following Hearing on [Husband's] October 1, 2004 Motion for Post-Decree Relief and [Wife's] October 29, 2004 Motion to Enforce Family Court Policies and Order [Husband] to Attend Kids First, Request for Mediation, Request for Voluntary Settlement Master for All Outstanding Issues, and Request for Voluntary GAL [Guardian Ad Litem] to Preserve [Daughter's] Rights (hereinafter "Judge YOUNG's November 30, 2004 Order").
10. Judge YOUNG's November 30, 2004 Order granted [Husband's] Motion to preclude [Wife] from using the CSEA and to require [Wife] to file any motions regarding child support in Family Court.
11. [Wife] appealed Judge YOUNG's November 30, 2004 Order and that appeal is still pending in the Hawaii appellate courts.
. . . .
III. CONCLUSIONS OF LAW.
. . . .
3. "[T]he doctrine of `law of the case' . . . refers to the usual practice of courts to refuse to disturb all prior rulings in a particular case[.]" Wong v. City & County of Honolulu, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983).
4. Judge YOUNG's November 30, 2004 Order precluding [Wife] from using the CSEA and requiring her to file any motions regarding child support in Family Court is the "law of the case" and will be the "law of the case" unless and until the Hawaii appellate courts set it aside.
5. Therefore, [Wife's] request to have the CSEA be allowed to administratively review and modify [Husband's] child support amount is denied.

C. Income and expense and asset and debt statements
In her Motion for Order, Wife requested, among other things, that the family court enter an order requiring Husband to provide her and the family court with completed and signed income and expense and asset and debt statements, so that she could "(a) pursue her request for review and modification of child support as permitted by HRS § 576D-7(e) [2006 Repl.]; and (b) recalculate the parties' current proportionate share of the fees and costs of the mental health professional as prescribed in that certain `Divorce Decree' . . . and that certain [AITD][.]"
In its Second Amended Order, the family court denied the motion and noted the following:
4. As of March 11, 2003 [Husband] owes 100% of all mental health care expenses for [Daughter]. Therefore, [Wife] does not need his financial documents to calculate partial payments for mental health care.
. . . .
9. Since there is no pending motion seeking an increase in child support before the Family Court, [Wife's] request that [Husband] be required to provide updated Income and Expense and Asset and Debt Statements is denied.
Wife moved for reconsideration, and on May 15, 2007, the family court filed the order denying Wife's Motion to Reconsider the Second Amended Order and its 5/15/07 FOF/COL, which provided the following:
1. Effective March 11, 2003, [Husband] has been financially responsible for one hundred percent (100%) of [Daughter's] mental health care expenses. Accordingly, [Wife] did not and does not need to see financial documents from [Husband] to calculate any partial payments from her for these expenses. There will be no partial payments required from her for these expenses.
2. Therefore, [Wife's] request for updated Income and Expense and Asset and Debt Statements from [Husband] on this basis is denied.
. . . .
6. Updated Income and Expense and Asset and Debt Statements from [Husband] might have been relevant and necessary if [Wife] had filed a motion requesting that the Family Court increase [Husband's] child support amount. See Rule 7(b)(5), Hawai`i Family Court Rules. [Wife], however, didn't file such a motion.
7. Since there is no pending motion seeking an increase in [Husband's] child support amount before the Family Court, [Wife's] request for updated Income and Expense and Asset and Debt Statements from [Husband] on this basis is denied.

D. Contempt order, attorney's fees and costs
After a November 10, 2004 hearing, the family court filed an order on November 30, 2004 (November 30, 2004 Order),[8] in which the court, among other things, ordered CSEA to close its case on Husband and ordered the parties to submit any future child support modification requests to the family court, not CSEA. Although the family court, in the order, reserved Husband's request for an award of attorney's fees and costs pending an affidavit from Husband's attorney regarding such, Husband's attorney had already filed his affidavit on November 24, 2004. Husband's attorney requested a total of $6,734.68 in attorney's fees and costs from Wife. Husband's attorney argued that Husband "was forced to file his October 1, 2004 Motion because [Wife] unreasonably initiated a case with the [CSEA]" and Husband "was also forced to respond to [Wife's] October 29, 2004 Motion which contained nothing but frivolous requests."
On November 24, 2004, the family court granted Husband's request for attorney's fees and costs.[9]
The family court's February 22, 2005 Findings of Fact and Conclusions of Law provided:
III. [COLs].
. . . .
12. The Court concludes after considering all the circumstances in this case that [Husband] shall be awarded attorney's fees and costs in the amount of $2,500.00 as a sanction against [Wife] for her frivolous actions and to prevent her from engaging in such actions in the future.
(Emphasis in original.)
On January 14, 2005, Wife timely filed a notice of appeal from the award of attorney's fees and costs.
On January 18, 2005, Wife filed a "Motion for Stay of the Order Awarding Attorney Fees and Costs Pending Appeal" (Motion for Stay). On February 16, 2005, the family court denied the motion.[10]
On February 18, 2005, Wife filed a motion for reconsideration of the family court's denial of her Motion for Stay, which the family court denied on March 7, 2005.[11]
In his April 26, 2006 Motion for Post-Decree Relief, Husband sought, inter alia, an "order finding [Wife] to be in civil contempt" because Wife failed to pay the court-ordered attorney's fees and costs.
It its Order Re April 26, 2006 Motion for Post-Decree Relief, the family court found:
27. The November 24, 2004 Order Awarding Attorney's Fees and Costs to [Husband], which awarded [Husband] $2,500.00 in attorney's fees and costs, is clear and unambiguous.
28. [Wife] has not paid the $2,500.00 award of attorney's fees and costs to [Husband].
29. Notice was given to [Wife], by [Husband's attorney], that [Husband] was not waiving payment of these attorney's fees and costs and that [Husband] would be seeking enforcement of the Court's November 24, 2004 Order.
30. Although [Wife] claims that she is entitled to offsets against this award, those alleged offsets were not agreed to by [Husband].
31. [Wife] has the right to file a motion(s) seeking any amounts that she claims [Husband] owes her.
32. [Wife] has and has had the ability to pay the $2,500.00 award of attorney's fees and costs to [Husband].
33. There was no evidence that [Wife] attempted to comply with the November 24, 2004 Order in a reasonable manner.
34. For all the above reasons, the Court finds by clear and convincing evidence that [Wife] violated the November 24, 2004 Order by failing to pay the $2,500.00 award of attorney's fees and costs and holds [Wife] in civil contempt of court.
Now therefore,
IT IS HEREBY ORDERED as follows:
. . . .
3. [Wife] shall pay the previously ordered $2,500.00 award of attorney's fees and costs to [Husband] within twenty (20) days of the entry of this Order. If she fails to comply with this order to pay, the award of attorney's fees and costs shall increase by $100.00 a day for each day that she fails to comply with the order to pay.
4. [Husband] is granted any and all rights to seek compliance with the above order to pay by way of liens, garnishments, and levies.
5. The Court declines at this time to order incarceration for [Wife] because the Court expects [Wife] to comply with the Court's orders.
(Emphasis in original.)

II. STANDARDS OF REVIEW
A. Family Court Decisions
Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.
Fisher v. Fisher, 111 Hawai`i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai`i 183, 189-90, 20 P.3d 616, 622-23 (2001)).

B. Civil Contempt Orders
"We review civil contempt orders under the abuse of discretion standard. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Wahba, LLC v. USRP (Don), LLC, 106 Hawai`i 466, 472, 106 P.3d 1109, 1115 (2005) (internal quotation marks and citations omitted).

III. DISCUSSION

A. CSEA
Wife maintains the family court erred by denying her leave to seek administrative review and modification of child support through CSEA. OB at 12
In its 5/15/07 FOF/COL, the family court concluded:
3. "[T]he doctrine of `law of the case' . . . refers to the usual practice of courts to refuse to disturb all prior rulings in a particular case[.]" Wong v. City & County of Honolulu, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983).
4. Judge YOUNG's November 30, 2004 Order precluding [Wife] from using the CSEA and requiring her to file any motions regarding child support in Family Court is the "law of the case" and will be the "law of the case" unless and until the Hawai`i appellate courts set it aside.
5. Therefore, [Wife's] request to have the CSEA be allowed to administratively review and modify [Husband's] child support amount is denied.
This court has stated the following with regard to the "law of the case" doctrine:
According to this doctrine, "unless cogent reasons support the second court's action, any modification of a prior ruling of another court of equal and concurrent jurisdiction will be deemed an abuse of discretion." Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawai`i 120, 135, 920 P.2d 334, 349 (1996) (quoting Wong v. City & County of Honolulu, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983) (internal brackets and quotation marks omitted; emphasis in original)). This doctrine is "a rule of practice based on considerations of efficiency, courtesy, and comity." Id. It is not completely inflexible, however, since a judge is allowed to modify a prior decision of another judge if either cogent reasons support such a modification, or exceptional circumstances are present. Tradewinds Hotel, Inc. v. Cochran, 8 Haw. App. 256, 264, 799 P.2d 60, 66 (1990).
Aoki v. Aoki, 105 Hawai`i 403, 411, 98 P.3d 274, 282 (App. 2004).
As this court held in Doe v. Doe, 118 Hawai`i 268, 188 P.3d 782 (App. 2008), the family court did abuse its discretion in its November 30, 2004 Order by ordering Wife to submit all future child support modification requests to the family court, rather than CSEA. We held that Wife had and continues to have the right to petition CSEA for a review of the child support amount, according to HRS § 576D-7(e) and 45 C.F.R. §§ 303.2(b), 303.4(c), 303.8, and 302.33.
Although this court had not issued its holding in Doe prior to the time the family court denied Wife's Motion for Order and Motion to Reconsider Second Amended Order, the family court erred by failing to modify Judge Young's order denying Wife's request to apply to CSEA for administrative review of the child support amount. Judge Young's abuse of discretion in denying Wife's request was a cogent reason for the family court in this case to modify its prior order.

B. Attorney's fees and costs
Wife contends the family court's civil contempt order for her failure to pay court-ordered attorney's fees and costs should be vacated and reversed because (1) nonpayment of a monetary judgment is ordinarily not a ground for contempt and (2) the sanction was and is pending on her appeal of the court's order awarding attorney's fees and costs.
In the instant case, because the family court erred by failing to modify its prior order denying Wife's request to apply for CSEA administrative review of the child support amount, the court erred by holding Wife in civil contempt for her failure to pay Husband his attorney's fees and costs, where the order to pay attorney's fees and costs was based in part on Wife's applying for CSEA administrative review of the child support amount. We held in Doe v. Doe, supra, that the family court abused its discretion in awarding these attorney fees and costs to Husband.
Therefore, we need not address these points.

C. Civil contempt
Wife argues that the family court erred in holding her in civil contempt of court in the Order re April 26, 2006 Motion for Post-Decree Relief for the following reasons.

1. Husband's custody day
Wife maintains the family court erred in holding her in contempt of court based on its finding that Daughter was with her during Husband's custody day. Her argument is based on Murray v. Murray, 60 Haw. 160, 587 P.2d 1220 (1978), and Hawaii Public Employment Relations Bd. v. Hawaii State Teachers Ass'n [HPERB], 55 Haw. 386, 392, 520 P.2d 422, 426 (1974).
In Murray, the husband appealed from a family court order finding him in contempt and ordering his confinement for failing to pay alimony. 60 Haw. at 160, 587 P.2d at 1221. The Supreme Court of Hawai`i held that the family court abused its discretion by punishing the husband for criminal contempt where the husband had not been charged and tried under HRS § 710-1077 (1993) (Criminal Contempt of Court). 60 Haw. at 161, 587 P.2d at 1222. In discussing the difference between civil and criminal contempt, the supreme court stated: "The significant and essential characteristic of a sanction imposed for civil contempt is that the penalty can be avoided by compliance with the court order." Id. at 162, 587 P.2d at 1222.
Wife gleans from the supreme court's dicta in Murray that since at the time the family court held her in contempt of court, on January 24, 2007, it was impossible for her to avoid the court's penalty by complying with the court order to not interfere with Husband and Daughter's parent-child relationship or conceal Daughter from Husband on his custody day of April 16, 2006, the court's contempt order must have been criminal in nature. She also alleges that the contempt order was "essentially criminal in nature," since it was "plainly punitive" and "manifestly not for the purpose of enforcing [her] compliance with the Court order." She argues that since the contempt order was essentially criminal, the family court violated HRS § 710-1077 without trying and charging her before issuing it.
A district family court judge may "[e]nforce decrees and judgments and punish contempts according to law[.]" HRS §571-8.5(a)(6) (2006 Repl.).
HRS § 571-81 (2006 Repl.) provides:
§571-81 Contempt of court. Any adult who wilfully violates, neglects, or refuses to obey or perform any lawful order of the court may be proceeded against for contempt of court. Any adult found in contempt of court may be punished as provided by law.
"It is not the fact of punishment but rather its character and purpose that often serve to distinguish civil from criminal contempt. The test may be stated as: what does the court primarily seek to accomplish by imposing sentence?" Hawaii Pub. Employment Relations Bd. v. United Pub. Workers, Local 646, AFSCME, AFL-CIO, 66 Haw. 461, 479, 667 P.2d 783, 795 (1983) (internal quotation marks, citation, and ellipsis omitted).
"The primary purpose of criminal contempt is to punish past defiance of a court's judicial authority, thereby vindicating the court." LeMay v. Leander, 92 Hawai`i 614, 621, 994 P.2d 546, 553 (2000).
In HPERB, the Hawai`i Supreme Court held:
Sentences or fines for criminal contempt are punitive in nature. Criminal contempts are crimes and the accused is entitled to the benefit of all constitutional safeguards, and cannot be convicted except by proof beyond a reasonable doubt, and cannot be compelled to testify against himself. Intent is an essential element of a criminal contempt and must be established beyond a reasonable doubt.
55 Haw. at 392, 520 P.2d at 426 (citations omitted).
The "Commentary" to HRS § 710-1077 states in relevant part that
[c]riminal contempt is conduct which brings the court into disrespect or which interferes with the administration of justice. The penalty for criminal contempt is a sentence or order which the defendant cannot avoid. Insulting behavior toward the court or an assault on a bailiff would constitute two modes of criminal contempt, for which a court might impose a sentence of imprisonment for a certain period of time.
With regard to civil contempt, the "Commentary" to HRS § 710-1077 provides:
Civil contempt is disobedience to a court order; it is punished by a penalty which is coercive and corrective in nature; the penalty can be avoided by compliance with the court order. For example, for refusal of a witness to answer a proper question, the court may order the witness imprisoned until the witness answers.
In HPERB, the Hawai`i Supreme Court stated that
in civil contempt proceedings, the question is not one of intent but whether alleged contemnors have complied with the court's order. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance and may be imposed for prohibited acts irrespective of intent.
55 Haw. at 392, 520 P.2d at 427.
In LeMay, the Supreme Court of Hawai`i stated that
civil contempt may be characterized as a court's desire to compel obedience to a court order, or to compensate the contemnor's adversary for injuries that result from noncompliance. In other words, there are essentially two forms of civil contemptcoercive and compensatory. Although civil contempt is often associated with a purge provision whereby contemnors may purge themselves of a fine or sanction by complying with the court's order, a sanction or fine without a purge provision is also considered to be remedial and civil, and not punitive and criminal, if paid to the complainant and not to the court. A contempt adjudication is also considered to be civil in nature when the sanction is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public.
The confusion between civil and criminal contempt arises as a result of civil contempt often having the incidental effect of vindicating the court's authority, while, conversely, criminal contempt may permit the movant to derive the incidental benefit of preventing future noncompliance. However, these incidental effects do not change the primary purpose of either type of contempt.
92 Hawai`i at 621-22, 994 P.2d at 553-54 (citations and footnote omitted).
In HPERB, the Circuit Court of the First Circuit (circuit court) adjudged the Hawaii State Teacher's Association (HSTA) in civil contempt of court for violating the court's preliminary injunction and fined HSTA for said contempt. 55 Haw. at 388, 520 P.2d at 424. HSTA appealed the validity of the contempt order and fine. Id.
One of the issues on appeal to the Hawai`i Supreme Court was "[w]hether the court action below was a proceeding in criminal or civil contempt." Id. at 390, 520 P.2d at 425. The supreme court held:
In the case before us, the sanctions provided for in the injunctive order are clearly conditional. Only the violative conduct of the HSTA makes the imposition of the sanction possible. Thus, the effect is a coercive one. HSTA is clearly warned not to start a strike in violation of the injunction. If HSTA does start a strike a fine of $100,000 is imposed. And, again coercively but conditionally, only if HSTA prolongs the strike, each additional day of strike brings an imposition of an additional fine of $10,000 a day.
We are of the opinion that the sanction provided for in the herein injunctive order is clearly for the purpose of coercing HSTA into complying with the said order of the court and the proceedings below was one of civil contempt.
Id. at 392, 520 P.2d at 427.
In the instant case, the proceedings below, like those in HPERB, were for civil contempt. The family court ordered Wife to "comply with the March 11, 2003 [Stipulated] Order in the future. If she fails to comply with the March 11, 2003 [Stipulated] Order, [Wife] shall pay [Husband] a fine of $ 750.00 a day for each day that she fails to comply with the March 11, 2003 [Stipulated] Order in the above manner." In issuing the contempt order, the family court intended to punish Wife's disobedience of the court order in a manner that was "coercive and corrective in nature." "Commentary" to HRS § 701-1077.
Wife claims that because her violation of the court order happened prior to the time she received the contempt order, she could not avoid the court's penalty. However, that is false. The family court's penalty was conditioned upon Wife's future noncompliance. Wife had the option of avoiding the penalty by complying with the family court's order in the future.
Further, the family court's sanction was "wholly remedial, serve[d] only the purposes of the complainant, and [was] not intended as a deterrent to offenses against the public." LeMay, 92 Hawai`i at 621, 994 P.2d at 553.
Wife attempts to distinguish HPERB from her case by arguing that "unlike the [HPERB] case, in which the circuit court sanctioned HSTA only after the conditional order was later violated, [Wife] never violated the conditional Sanction Order in this case." As we have already held, the family court did not sanction Wife in this case. The family court imposed a sanction conditioned on Wife's failure to comply with the court's order in the future.

D. Child support, Husband's interest in Estate
Wife contends the family court erred by denying her request to order Husband to pay her an amount equivalent to the income and principal distributions of 5% of Husband's interest in and to an Estate that the family court awarded her in the Divorce Decree, even though she ceased to be trustee of the Trust, because the arrangement was in the nature of child support and the court's intention in making the decree should control, pursuant to Hartman v. Thew, 101 Hawai`i 37, 61 P.3d 548 (App. 2002).
In Hartman, this court held that "[w]hen interpreting a decree/judgment, the determinative factor is the intention of the court as gathered from all parts of the decree/judgment itself." Id. at 41, 61 P.3d at 552.
In the November 30, 1992 assignment, Husband assigned to Wife, as Trustee of the Trust for Daughter, 5% of his interest in and to an Estate. In the Child Support section of the 7/23/96 AITD, the parties noted Wife's receipt of the 5% interest for Daughter's benefit:
2. CHILD SUPPORT.
. . . .
(f) Trust Income. In addition to the said payments to be made by Husband, Wife acknowledges that:
(i) As sole Trustee of the [Trust], she shall have available to her for the benefit of [Daughter] the income and principle distributions of Five Percent (5%) of Husband's interest in and to the [Estate], all as provided for in that certain assignment by Husband dated November 30, 1992 . . . . Such income to Wife (for the benefit of [Daughter]) during 1995 totaled approximately $22,000.00. The parties expect that such trust income will continue at not less than that level.
. . . .
(iii) Husband was motivated to make [the assignment] because of his concern for providing support for [Daughter] . . . . [The assignment] should be considered as an exceptional circumstance in any current or future child support guidelines calculations.
In the Divorce Decree, the family court decreed:
9. CHILD SUPPORT.
(a) Amount. [Husband] shall pay directly to [Wife] as and for the support, maintenance, and education of [Daughter] the sum of FOUR THOUSAND DOLLARS ($4,000) per month.
. . . .
(f) Trust Income. In addition to the said payments to be made by [Husband], [Wife] acknowledges that as sole Trustee of the [Trust], she shall have available to her for the benefit of [Daughter] the income and principle distributions of Five Percent (5%) of [Husband's] interest in and to [an Estate], all as provided for in that certain assignment by [Husband] dated November 30, 1992 as more fully described in the parties' [AITD][.]
Husband made the 5% assignment prior to the finalization of the parties' divorce. The family court never ordered Husband to make the assignment and the court did not enforce it, although the court made note of the assignment when ordering Husband's payment of child support in the Divorce Decree.
Once Wife ceased to be Trustee, Wife lost the right to receive the 5% interest on Daughter's behalf. Wife does not argue and there is no evidence in the record on appeal that the successor Trustee did not continue receiving the 5% interest for Daughter's benefit. That being the case, there is no reason the family court should have ordered Husband to pay to Wife the equivalent of the 5% interest, when he had already assigned that amount to the Trust for Daughter's benefit.
The family court did not abuse its discretion by denying Wife's request to order Husband to pay Wife the equivalent of 5% of Husband's interest in and to an Estate.

E. Income and expense and asset and debt statements
Wife argues the family court erred when it denied her request for an order requiring Husband to provide her and the family court with completed and signed income and expense and asset and debt statements because she did not seek an order from the family court increasing child support, but sought an order allowing CSEA to do so.

1. Impact of child support on Husband's financial condition
Wife argues that Husband's financial information was relevant to show how his financial condition would be impacted by an order to pay Wife the amount of child support being requested, i.e., the $4,000 per month, plus a lump sum of $1,532,871.26. However, the family court denied Wife's request to award her the equivalent of income and principal distributions of 5% of Husband's interest in an Estate on the basis that there was no evidence "the current Trustee would not provide for [Daughter's] appropriate needs and benefit if requested." Therefore, whether Husband could afford to pay Wife that amount was moot.

2. HRS § 576D-7(e)
Wife maintains that she was entitled to asset and debt and income and expense statements from Husband as a consequence of applying for CSEA review of the child support amount. Although we have held in the instant case that Wife was entitled to apply for CSEA review of the child support amount, see Part III.A, Wife provides no authority and we find none for the notion that she was entitled to asset and debt and income and expense statements from Husband as a result.

3. Hawai`i Family Court Rules (HFCR) Rule 7(b)(5)
Wife claims that Husband was obligated to submit his signed financials under HFCR Rule 7(b)(5) since part of the alternative relief sought by Wife was a review and modification of the current child support arrangement.
HFCR Rule 7(b)(5) provides, in relevant part:
Rule 7. PLEADINGS ALLOWED; FORM OF MOTIONS.
. . . .
(b) Motions and Other Papers.
. . . .
(5) Any motion seeking an order for or modification of financial or monetary relief of any kind, except for an award of attorney's fees in enforcement proceedings, shall have attached, typewritten, unless otherwise permitted by the court for good cause shown, income and expense and asset and debt statements on the forms provided by the court or equivalent forms, executed by the movant and duly notarized or executed under penalty of perjury, and any person responding to such motion shall prepare and submit to the court and the movant, no later than 48 hours prior to the hearing of such motion, unless the date of the hearing is less than 5 working days after service of said motion on the respondent, income and expense and asset and debt statements on the forms provided by the court or equivalent forms, executed by such respondent and duly notarized or executed under penalty of perjury. Where the time between service and the hearing date is less than 5 working days, such statements shall be submitted not later than immediately prior to the hearing. The sanctions provided in Rule 37(b)(2) shall apply in the event of failure to comply with this rule.
(Emphases added.)
Wife did not seek an order from the family court modifying child support. Therefore, Husband was not required to submit income and expense and asset and debt statements pursuant to HFCR Rule 7(b)(5).

4. Mental health professional
Wife argues that Husband's financial information was and is relevant to calculate the parties' current proportionate share of the fees and costs of Daughter's mental health professional, as prescribed in the 7/17/96 AITD and the Divorce Decree. However, the family court found, and Wife does not dispute, that "[a]s of March 11, 2003 [Husband] owes 100% of all mental health care expenses for [Daughter]." Therefore, no such calculation was required and, thus, Husband's financial information was not needed for that purpose.

IV. CONCLUSION
We vacate (1) the portion of the Second Amended Order filed on March 19, 2007, in which the family court found that it could not modify its prior order denying Wife's request to apply for CSEA administrative review of the child support amount; and (2) the portion of the "Order Regarding Plaintiff's April 26, 2006 Motion and Affidavit for Post Decree Relief" filed on January 24, 2007, in which the family court adjudged Wife in civil contempt for violating the court's order to pay Husband attorney's fees and costs, and remand this case for proceedings consistent with this opinion. We affirm the remainder of the Second Amended Order and the "Order Regarding Plaintiff's April 26, 2006 Motion and Affidavit for Post Decree Relief."
NOTES
[1] The Honorable Karen M. Radius issued the Second Amended Order.
[2] The Honorable Karen M. Radius issued the order.
[3] The Honorable Darryl Y.C. Choy issued the Divorce Decree.
[4] The Honorable R. Mark Browning entered the "Amended Order Relating to Custody, Visitation, and Appointment of Custody Guardian Ad Litem," which modified the custody arrangement.
[5] The Honorable Allene R. Suemori issued the Stipulated Order.
[6] The Honorable Karen M. Radius issued the Minute Order.
[7] The Honorable Karen M. Radius issued the order and the Findings of Fact and Conclusions of Law.
[8] The Honorable Gregg Young issued the order.
[9] The Honorable Gregg Young issued the November 24, 2004 "Order Awarding Attorney's Fees and Costs to Plaintiff."
[10] The Honorable Bode A. Uale issued the order.
[11] The Honorable Bode A. Uale issued the order.